755 So.2d 226 (2000)
INDEPENDENT FIRE INSURANCE COMPANY, Elizabeth Cannon, wife of and Nary Cannon
v.
SUNBEAM CORPORATION, Sunbeam-Oster Company, Inc. and Sunbeam-Oster Housewares, Inc., d/b/a Sunbeam Outdoor Products, and Ray Jenkins and/or Otha Jenkins d/b/a Jenkins Towing and Jenkins Shell Service Station.
Nos. 99-C-2181, 99-C-2257.
Supreme Court of Louisiana.
February 29, 2000.
Rehearing Denied April 7, 2000.
*227 Bernard J. Rice, III, Gretna, Counsel for Applicant in No. 99-C-2257.
Lawrence Emerson Abbott, Paul Eric Harrison, Stephen Busch Panus, Margaret Diamond, Richard Bouligny Eason, II, Colvin Gamble Norwood, Jr., New Orleans, Barry Francis Viosca, Metairie, Counsel for Respondent in 99-C-2257.
Margaret Diamond, Richard Bouligny Eason, II, Colvin Gamble Norwood, Jr., New Orleans, Counsel for Applicant in No. 99-C-2181.
Lawrence Emerson Abbott, Paul Eric Harrison, Stephen Busch Panus, New Orleans, Bernard J. Rice, III, Gretna, Counsel for Respondent in No. 99-C-2181.
John J. Weigel, New Orleans, Counsel for amicus curiae Louisiana Association of Defense Counsel.
VICTORY, J.[*]
We granted these writs to determine whether Louisiana Code of Civil Procedure *228 article 967 prohibits the consideration of expert opinion evidence, in the form of either affidavits or depositions, by the trial judge in deciding a motion for summary judgment. After reviewing the record and the applicable law, we reverse the decision of the court of appeal and hold that, assuming the expert opinion evidence would be admissible at trial, the trial court must consider the evidence at the summary judgment stage. Further, we also reverse the judgment of the trial court granting summary judgment in favor of the third-party defendants and remand this case to the trial court for trial on the merits.

FACTS AND PROCEDURAL HISTORY
Mr. Nary Cannon testified in his deposition as follows. On the evening of September 19, 1992, a fire started in his propane gas barbeque grill, which was manufactured by defendant, Sunbeam Corporation ("Sunbeam"). Mr. Cannon testified that on that evening, he had cooked hamburgers on the Sunbeam grill inside their enclosed patio. A propane tank manufactured by Sunbeam was underneath the grill on a rack and was connected to the grill and in use. A spare propane tank, manufactured by Char-Broil, was also being stored on the bottom rack next to the Sunbeam tank. Mr. Cannon preheated the grill for five to ten minutes, and cooked the hamburgers. After cooking the hamburgers, he turned the grill to the "clean mode," which is set at a higher temperature, and went inside his home. Shortly thereafter, he heard a loud hissing sound coming from the grill, looked out the patio door, and saw flames coming out of the Sunbeam tank and going up the back wall and in all directions from there. He immediately went inside to get his family out of the house and then went to a neighbor's house to call 911. He returned to view the fire from outside the patio, about 25 feet from the grill, and saw the flames still coming only from the Sunbeam tank. He then heard another loud hissing sound and saw flames coming from the Char-Broil tank and hitting the back wall. The Cannon's home was severely damaged in the fire and the Sunbeam grill and both tanks were destroyed.
The Cannons and their homeowners' insurer, Independent Fire Insurance Company, brought suit against Sunbeam, contending that the fire was caused by an unreasonably dangerous and/or defective condition of the barbeque grill or the safety valve on the Sunbeam propane tank. Sunbeam filed a third-party demand against Ray Jenkins and/or Otha Jenkins d/b/a Jenkins Towing and Jenkins Shell Service Station ("Jenkins Shell"), claiming that it negligently overfilled the spare Char-Broil tank, that the tank vented, and that the vapors ignited. Plaintiffs then amended their petition to assert a negligence claim against Jenkins Shell.
Jenkins Shell filed a motion for summary judgment, asserting that there was no evidence that Jenkins Shell had overfilled the spare tank nor any evidence that plaintiffs' property damage was proximately caused by an act of Jenkins Shell. In support of this motion, Jenkins Shell produced the deposition of Mr. Cannon which contained his eyewitness account of the fire, as stated above. In this deposition, Cannon also stated that although he did not remember exactly when or where he last filled the Char-Broil tank and had not kept any receipts, he routinely had his tanks filled at Jenkins Shell. He further testified that he had used the Char-Broil tank one or two times since it was last filled.
Jenkins Shell also produced the affidavit and deposition of Otha Ray Jenkins, who stated that he did not remember filling the Cannon's spare Char-Broil tank. Mr. Jenkins also described the customary procedure for filling a propane tank the size of the Char-Broil tank in question and attested to the fact that his propane gas facility has state inspected equipment and that he has been properly trained to fill propane tanks.
*229 Finally, Jenkins Shell produced the expert reports of three expert witnesses, along with portions of their depositions. Fred Liebkemann, a mechanical engineer, opined in his expert report that the fire was caused by the discharge of a large volume of propane gas out of the pressure relief port of the Sunbeam tank, which happened because either the tank was subject to excessive heat from the grill or the tank had a defective relief valve. He opined that the Char-Broil tank was not overfilled, based on the eyewitness testimony of Cannon and his own examination of the Jenkins facility, which met all safety standards for filling propane gas tanks. In his deposition, he also referred to 43 other cases involving various problems with Sunbeam tanks or grills.
Jenkins Shell also produced the expert report and partial deposition of Harold Myers, an engineer who opined that based on the eyewitness testimony and his knowledge of other problems associated with Sunbeam grills, the fire originated from the discharge of gas from the safety valve of the Sunbeam tank when it was subjected to excessive heat in the compartment where the tanks are housed on the grill. Lastly, Jenkins Shell produced the partial deposition of expert witness Randall Bruff, an investigator for the INS Investigative Bureau, who opined that the most likely cause of the fire was the malfunction of the hose line which connected to the Sunbeam tank.
In opposition to the motion for summary judgment, plaintiffs and third-party plaintiffs produced the expert report and partial deposition of William Baynes, the Director of Engineering Services for Sunbeam Outdoor Products. Mr. Baynes performed tests using equipment similar to the Cannon's grill, but with a properly-filled spare propane tank and a non-defective operating tank and grill. He tested the grill by replicating the use of the grill as described by Mr. Cannon and by allowing the grill to remain lit on a high setting for an extended period of time, and neither caused the safety relief valve on the properly filled spare tank and nondefective operating tank to vent and expel propane. Based on his testing, he concluded that it was not possible that the flames came from the operating Sunbeam tank because when a tank is in use, the pressure in the tank, and thus the temperature, is decreasing, whereas the temperature in the spare tank is increasing. He opined that, contrary to Mr. Cannon's recollection of the incident, the only possible scenario was that the fire resulted from the accidental venting of the safety relief valve of an overfilled spare tank, the Char-Broil tank, stored under the grill. He testified that his conclusion was not based on any first-hand knowledge as to how the tank was filled because he was not present when it was filled.
At the hearing on the motion for summary judgment, the trial judge asked plaintiffs' attorney the following questions about Baynes' conclusion that the spare tank was overfilled:
Judge: Is that a conclusion on your part? What proof is there in this record that it was overfilled?
Attorney: That's testimony of our expert based on his own testing, and he is the only expert in this case, one, who's qualified to testify about this and, two, who actually did testing.
Judge: But he didn't test this charbroil tank, did he? And he wasn't there when it was filled, was he?
Attorney: No.
Judge: So if he wasn't there when it was filled, he didn't test the charbroil tank, he doesn't know how much gas is placed in the tank, how is he able to come to that conclusion under Daubert-Foret that the tank is overfilled?
Attorney: As I've explained earlier, he is the only expert in this case who has knowledge regarding these kinds of fires. He did testing in the lab at Sunbeam where they design these grills to establish these points. And under Daubert-Foret *230 because of these kinds of testing and his expertise, he's easily qualified to testify and give his opinions to the jury about the cause of his particular fire.
Judge, we believe that all of that creates a genuine issue of material fact.
The court granted Jenkins Shell's motion for summary judgment, giving the following oral reasons:
Mr. Eason [plaintiffs' attorney], I would tend to say that I'm sure that you could present all of this to a jury if it's properlyhas a proper foundation and all the proper questions are asked. But I don't see how it has anything to do with Jenkins Service Station. So I'm going to grant the motion for summary judgment as to Mr. Jenkins. There is no fact that I can find anywhere that indicates that Mr. Jenkins overfilled that tank.
In fact, everything is to the contrary, that there was nothing shown that he overfilled the tank. Mr. Bains' [sic] report from my point of view isdoesn't even include the testing or the testing of a similar type of charbroil tank. But more importantly, there is nothing that indicates that Mr. Bains [sic], who wasupon whose report you are relying, that he did anything to show or based his opinion on any facts that had to do with exactly what happened at Jenkins Service Station as to the filling of the tank.
And, specifically, his deposition states categorically that, no, he doesn't know how it was filled. Given that and given the fact that in Number 11 of his report he says that the plaintiffs failed to follow the warnings and the instructions supplied with the grill. More specifically, the plaintiffs operated the grill with the spare cylinder stored beneath the grill, used the grill indoors in a fully inclosed screened porch and operated a grill under an overhead combustible surface.
From what I see, I think the motion for summary judgment is well-founded. The Court will grant it and sign a judgment to that effect.
The court of appeal affirmed, but held that it could not consider the expert opinions based on a line of First Circuit cases that held as follows:
While facts recorded by an expert through personal observation or examination may be admissible for purposes of summary judgment, the opinions or beliefs of the expert, though derived from personal observation or examination and based upon specialized training or experience, are not the type of "personal knowledge" contemplated by the codal article. Miceli v. Armstrong World Industries, 96-1134, n. 10 (La. App. 1st Cir. 3/27/97), 691 So.2d 283, 289, writs denied, 97-1110, 97-1090 (La.6/13/97), 695 So.2d 980, 985. Bearing these principles in mind, we will review the evidence submitted by the parties and determine which evidence we may consider on a motion for summary judgment in light of the limitations set forth in LSA-C.C.P. art. 967.
Independent Fire Ins. Co. v. Sunbeam Corp., 98-0888 (La. 1 Cir. 5/14/99), 733 So.2d 743, 746. The court concluded that, without considering the ultimate opinions or beliefs expressed by the any of the experts, plaintiffs and third-party plaintiffs did not produce sufficient evidence to prove all elements of their negligence claim against Jenkins Shell. Id. at 747. We granted writs filed by Sunbeam and Independent Fire Insurance Company to consider whether the First Circuit correctly excluded from consideration the opinions expressed by the expert witnesses. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 c/w 99-2257 (La.11/12/99), 748 So.2d 1172.

DISCUSSION
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment *231 will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2). "In effect, the amendment `levels the playing field' between the parties in two ways: first, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed." Hardy v. Bowie, 98-2821, p. 5 (La.9/8/99), 744 So.2d 606 (citing Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41). "The amendment to Art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Proc. 56(c) ..." Id.
Article 967 of the Louisiana Rules of Civil Procedure, which was enacted in 1960 and has been amended only once, in 1966, describes the type of documentation a party may submit in support of or opposition to a motion for summary judgment. At issue in this case is the following language of Article 967:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
La. C.C.P. art. 967 (emphasis added). Consistent with other First Circuit opinions, the court of appeal in this case cited this article in refusing to consider the expert opinions, submitted by way of expert reports and depositions, in ruling on Jenkins Shell's motion for summary judgment:
Code of Civil Procedure article 967 requires that affidavits in support of a motion for summary judgment be based on personal knowledge. Statements of an expert as to his professional opinion or belief, based upon his special training and experience, do not meet the requirement of "personal knowledge," and for that reason do not qualify as a proper foundation in support of a motion for summary judgment.
733 So.2d at 746 (citing Jones v. Allstate Ins. Co., 619 So.2d 111, 114 (La.App. 1st Cir.), writ denied, 626 So.2d 1186 (La. 1993)); see also Miceli v. Armstrong World Indus., supra (holding that defendants were not entitled to a summary judgment which was based only on depositions containing expert physician opinion as to cause of death); Harris v. Landry, 97-0525 (La.App. 1 Cir. 4/8/98), 734 So.2d 1 (holding that neither affidavits nor depositions of experts, which were not based on personal knowledge, were admissible at the summary judgment stage); but see Simmons v. Berry, 98-0660 (La.App. 1 Cir. 9/3/99), 748 So.2d 473 (en banc) (holding that expert opinion evidence submitted by way of affidavit is inadmissible at the summary judgment stage under La. C.C. P. art. 967, but is admissible if submitted by way of deposition and overruling *232 Miceli and Harris to the extent they held that depositions were not admissible at summary judgment stage).
The Third and Fifth Circuits take the view that expert opinions, by way of either affidavit or deposition, that are not based on first hand observation or knowledge, are not proper support of a motion for summary judgment. See Read v. State Farm Fire & Cas. Ins. Co., 98-720 (La. App. 3 Cir. 12/23/98), 725 So.2d 85 (holding that affidavit containing expert opinion does not meet the personal knowledge requirement of Article 967); Griggs v. Riverland Med. Ctr., 98-256 (La.App. 3 Cir. 10/14/98), 722 So.2d 15, writ denied, 99-0385 (La.5/28/99), 735 So.2d 622; Duhon v. Southern Pac. Transp. Co., 98-268 (La. App. 3 Cir. 10/7/98), 720 So.2d 117; Ivy v. Freeland, 576 So.2d 1117 (La.App. 3 Cir. 1991) (holding that depositions containing expert testimony are also inadmissible); Hidalgo v. General Fire & Cas. Co., 254 So.2d 493 (La.App. 3 Cir.1971); but see Quick v. Myers Welding & Fabricating, Inc., 94-282 (La.App. 3 Cir. 12/7/94), 649 So.2d 999, writ denied, 95-0729 (La.4/28/95), 653 So.2d 598 (holding that expert opinion as to degree to which a welder should be aware of the consequences of an act associated with the welding process was not precluded by La. C.C.P. art. 967); McElreath v. Progressive Ins. Co., 595 So.2d 693 (La.App. 5 Cir.), writ denied, 596 So.2d 557 (La.1992); Weston v. Raymond Corp., 531 So.2d 528 (La. App. 5 Cir.), writ denied, 533 So.2d 360 (La.1988).
However, the Fourth Circuit has allowed expert opinion to support a motion for summary judgment. In Obiago v. Merrell-National Laboratory, Inc., 560 So.2d 625 (La.App. 4 Cir.), writ denied, 565 So.2d 445 (La.1990), the court held that "an expert's opinion, derived from scientific/medical data ... is more a statement of fact based on personal knowledge acquired through research and experience." See also Buffa v. Lawrence's Bakery, Inc., 615 So.2d 418 (La.App. 4 Cir.1993) (allowing expert's affidavit because it "includes facts derived from his own personal observation and inspection of plaintiffs' property as well as his opinion as a professional engineer of the cause of the damage"); Richoux v. Tulane Medical Ctr., 617 So.2d 13 (La.App. 4 Cir.1993) (holding that "[t]he opinion of a medical review panel is admissible as expert evidence in a malpractice" at the summary judgment stage, although expert opinion of an independent doctor is not); Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4 Cir.1987).
The Second Circuit has treated this issue inconsistently. In some cases it has held that affidavits or depositions containing expert opinions are inadmissible. See e.g., McCoy v. Physicians & Surgeons Hosp., Inc., 452 So.2d 308 (La.App. 2 Cir.) (holding that "[s]tatements in affidavits or depositions of the opinion or belief of an expert based on his special training and experience do not meet the requirement of personal knowledge"), writ denied, 457 So.2d 1194 (La.1984); Barnett v. Staats, 25,357 (La.App. 2 Cir. 1/19/94), 631 So.2d 84; Bockman v. Caraway, 29,436 (La.App. 2 Cir. 4/2/97), 691 So.2d 815 (affidavits not admissible). In other cases, the Second Circuit has held that affidavits containing expert opinion evidence are proper support for a motion for summary judgment. See e.g., Gardner on Behalf of Gardner v. Louisiana State Univ. Med. Ctr. in Shreveport, 29,946 (La.App. 2 Cir. 10/29/97), 702 So.2d 53; Bailey v. United Gas Pipe Line Co., 27,655 (La.App. 2 Cir. 12/6/95), 665 So.2d 664, writ denied, 96-0058 (La.2/28/96), 668 So.2d 372.
Contrary to the unsettled state of the jurisprudence under our state law, federal courts, which are governed by virtually the same "personal knowledge" requirement as Louisiana Courts,[1] routinely consider *233 expert opinion evidence in affidavits or depositions at the summary judgment stage under the factors enumerated in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See e.g., Ruffin v. Shaw Indus., Inc., 149 F.3d 294 (4 Cir.1998) (holding that because an expert opinion affidavit would not be admissible at trial under Daubert, it was not admissible on motion for summary judgment); First United Financial Corp. v. United States Fidelity & Guar. Co., 96 F.3d 135, 136-137 (5 Cir. 1996) (noting that "the admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment"); Hayes v. Douglas Dynamics, Inc., 8 F.3d 88 (1 Cir.1993) ("the evidentiary rules were `not intended ... to make summary judgment impossible whenever a party has produced an expert to support its position,'" but "where an expert presents `nothing but conclusionsno facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment"), cert. denied, 511 U.S. 1126, 114 S.Ct. 2133, 128 L.Ed.2d 863 (1994); Elkins v. Richardson-Merrell, Inc., 8 F.3d 1068 (6 Cir. 1993); Clark v. Takata Corp., 192 F.3d 750 (7 Cir.1999); Porter v. Whitehall Lab., Inc., 9 F.3d 607 (7 Cir.1993); Sorensen v. Shaklee Corp., 31 F.3d 638 (8 Cir.1994); Ambrosini v. Labarraque, 101 F.3d 129 (D.C.Cir.1996).
In Daubert, the plaintiff offered expert opinion evidence in opposition to a motion for summary judgment, which the lower courts found was not sufficient to overcome defendants' motion for summary judgment because the expert opinion was based on a scientific technique which was not "generally accepted" as reliable in the relevant scientific community, citing Frye v. U.S., 54 App.D.C. 46, 47, 293 F. 1013 (1923). 951 F.2d 1128 (9 Cir.1991). The United States Supreme Court granted certiorari because of the split of authority between the circuits regarding the proper standard for the admission of expert testimony. 506 U.S. 914, 113 S.Ct. 320, 121 L.Ed.2d 240 (1992). In formulating the proper standard on this motion for summary judgment, the Court did not even refer to the "personal knowledge" requirement of Rule 56(e). Instead, the Court focused on Federal Rule of Evidence 702 regarding the general admissibility of expert testimony, which is identical to Louisiana Code of Evidence article 702.[2] The Court addressed the relaxation of the firsthand knowledge requirement as follows:
Rule 702's "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. That these requirements are embodied in Rule 702 is not surprising. Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703. Presumably, this relaxation of the usual requirement of firsthand knowledgea rule which represents "a `most pervasive manifestation' of the common law insistence upon `the most reliable sources of information,'" Advisory Committee's *234 Notes on Fed. Rule Evid. 602, 28 U.S.C.App., p. 755 (citation omitted)is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of discipline.
Daubert, 509 U.S. at 591-92, 113 S.Ct. 2786. The Court found that "[f]aced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), n. 10 whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 592, 113 S.Ct. 2786. The Court explained that this would entail "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. The Court then enumerated four factors which the trial court may consider in fulfilling its gatekeeping role.[3]Id. at 594, 595, 113 S.Ct. 2786. Further, the Court addressed the gatekeeping role in the context of a summary judgment motion and held that "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free ... to grant summary judgment, Fed. Rule Civ. Proc 56." Id.
In another summary judgment case, the Supreme Court recently held in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999), that Daubert's general "gatekeeping" obligation "applies not only to testimony based on `scientific' knowledge, but also to testimony based on `technical' and `other specialized' knowledge." The Court further held that the trial court may consider one or more of the four Daubert factors, but that the list of factors "neither necessarily nor exclusively applies to all experts or in every case." 119 S.Ct. at 1171.
In considering whether expert opinion testimony will be admissible at trial, this Court has adopted the Daubert standards as those to be utilized by Louisiana courts. State v. Foret, 628 So.2d 1116 (La.1993). In so doing, we reasoned:
Since much of the Louisiana Code of Evidence is patterned after the Federal Rules of Evidence in an attempt to facilitate a "movement towards a uniform national law of evidence", it seems appropriate for Louisiana Courts to, "especially where the language of the Louisiana Code is identical or virtually identical with that used ... in the federal rules" utilize this "body of persuasive authority which may be instructive in interpreting the Louisiana Code." La. C.E. art. 102, Comment "a". As the Louisiana Code of Evidence provision on expert testimony is identical to the federal Rule, it follows that this court should carefully consider the Daubert decision that soundly interprets an identical provision in the federal law of evidence.
628 So.2d at 1122-23. We concluded that "[a]s we find the Daubert court's `observations' on what will help to determine this threshold level of reliability to be an effective guide, we shall adopt these `observations,' as well." Id. at 1123.
As stated earlier, because of the similarity between the amendments to La.Code of Civ. Proc. art. 966 and Fed. Rule Civ. Proc. 56(c), we have also adopted the federal courts' more liberal standard for summary judgment. Hardy v. Bowie, supra, *235 744 So.2d at 610 (citing Hayes v. Autin, supra at 694-95). Accordingly, it follows that we now adopt the Daubert standards for admissibility of expert opinion evidence at the summary judgment stage, as do the federal courts.
After all, it would be inequitable and illogical to allow a party who has eyewitness testimony to be granted a summary judgment over a party who has no eyewitness testimony, but who does have expert opinion evidence, which if believed, would contradict the eyewitness testimony. In such a case, the party with only expert opinion evidence may have actually prevailed at trial but would lose on summary judgment because his evidence would not be admissible as it is not based on personal knowledge. For example, a driver of a vehicle, claiming that her brakes were defective, may testify that she was pressing the brakes of her car but nonetheless the car increased its forward speed before a collision. She could file a motion for summary judgment attaching her affidavit attesting to the facts as she remembers them. The car or brake manufacturer, who has no eyewitness evidence, may nonetheless have expert opinion evidence that, based on his knowledge of the brake system and his training and experience, the brakes did not fail and the driver must have pressed the accelerator instead of the brakes. A jury may not believe the driver and may be convinced that based on the defendant's expert evidence, which is based on the circumstances of the case (i.e., increased, rather than decreased, speed), the driver did in fact press the accelerator and not the brakes, and would find in favor of the defendant at trial. In such a case, it would be illogical and inequitable to allow that same plaintiff, who would have lost at trial, to prevail on summary judgment because the defendant's evidence submitted in opposition to the motion was not based on personal knowledge under La. C.C.P. art. 967.
Further, as stated by the authors of a learned treatise when discussing the unsettled state of the law among Louisiana courts, "[i]t is doubtful that the redactors of the Code had experts in mind when they used the term `personal knowledge.'" Frank L. Maraist and Harry T. Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure, § 6.8, p. 145 (1999). Article 967 was enacted in 1960, well before the proliferation of expert opinion evidence on summary judgment. Since that time, the Legislature has enacted Article 702, which allows an expert, by virtue of his knowledge, skill, experience, training, or education, to testify in the form of an opinion as to matters about which he has no personal knowledge.
We also note that, although no affidavits were submitted in support of or in opposition to the motion for summary judgment filed by Jenkins Shell, we disagree with the argument that because La. C.C.P. art. 967 specifies only that "affidavits shall be made on personal knowledge" and makes no mention of depositions, that there should be a distinction between affidavits containing expert opinions and depositions containing expert opinions. Although it is true that an expert is subject to cross examination at a deposition, affidavits are subject to challenge as well, by way of a Daubert hearing, a motion to strike,[4] or counter affidavits. Further, it is impractical for a party to be required to depose his or her own expert in order for that expert's opinion to be admissible at the summary judgment stage.
Thus, having determined that, rather than automatically excluding expert opinion evidence at the summary judgment stage, the Daubert-Foret standards should *236 be considered by the trial judge in deciding whether to admit expert opinion evidence, several important underlying principles must be reinforced. The first is that the trial judge cannot make credibility determinations on a motion for summary judgment. See Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-C-0201, p. 6 (La.10/19/99), 748 So.2d 417 ("[t]he rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony"); Maraist & Lemmon, supra, p. 145 ("[i]n deciding a motion for summary judgment, the court must assume that all of the affiants are credible..."). Second, the court must not attempt to evaluate the persuasiveness of competing scientific studies. In performing its gatekeeping analysis at the summary judgment stage, the court must "focus solely on the principles and methodology, not on the conclusions they generate." Daubert, supra at 595, n. 6, 113 S.Ct. 2786. Third, the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion." Maraist & Lemmon, supra, p. 145. Fourth, and most importantly, summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial.[5]
In this case, Jenkins' Shell presented eyewitness testimony that the flames came first from the Sunbeam tank, indicating that no condition of the spare Char-Broil tank caused the fire. Jenkins Shell also presented the expert reports and partial depositions of three experts, each of whom, based on the eyewitness account of the fire, expressed differing opinions as to the exact condition of the Sunbeam tank or grill that caused the fire, but each of whom related the cause of the fire to the Sunbeam equipment. In opposition to this motion, Sunbeam and Independent Fire presented the expert report and partial deposition of one expert witness, who opined that the Char-Broil tank must have been overfilled and this must have caused the fire, based on his testing which involved a Sunbeam tank and grill and a correctly filled Char-Broil tank. No one has argued that any of this expert opinion evidence would be inadmissible at trial under Daubert-Foret or any other evidentiary rules, and based on the record before us, we see no reason why it would be. Therefore, the remaining determination to be made is whether the evidence submitted by plaintiffs and third-party plaintiffs created a genuine issue of material fact, i.e., that Jenkins Shell overfilled the tank.
Although plaintiffs and third-party plaintiffs presented no direct evidence that the Char-Broil tank was overfilled, they did present circumstantial evidence from their expert that the Char-Broil tank was overfilled and this caused the fire.[6] Although this evidence is circumstantial and conflicts with the eyewitness testimony that the fire started in the Sunbeam tank, we cannot "conclude[] that *237 the scintilla of evidence presented supporting [this expert's] position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true," such that a trial court should grant summary judgment. See Daubert, supra at 596, 113 S.Ct. 2786. Further, all three of the third-party defendants' expert opinions are based on Mr. Cannon's eyewitness testimony that the flames originated from the Sunbeam tank. At trial, a jury may not believe Mr. Cannon, who apparently was not supposed to have placed the spare tank on the grill rack[7], and may give credence to Mr. Baynes' opinion that the spare tank was overfilled. This expert opinion evidence created a genuine issue of material fact as to whether the spare tank was overfilled. Therefore, we hold that the trial court erred in granting Jenkins Shell's motion for summary judgment.

CONCLUSION
Article 967 of the Louisiana Rules of Civil Procedure does not preclude from consideration expert opinion testimony in the form of an affidavit or deposition submitted in support of or opposition to a motion for summary judgment. Assuming no credibility determination is at issue, the trial judge must consider this evidence if he or she determines that such evidence would be admissible at trial. If qualifying evidence is submitted in opposition to a motion for summary judgment which creates a dispute as to a genuine issue of material fact, the motion for summary judgment should be denied.

DECREE
The decisions of the lower courts granting Jenkins Shell's motion for summary judgment are reversed and this case is remanded to the trial court for trial on the merits.
REVERSED AND REMANDED.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, Justice, dissenting in part.
I agree with the majority's analysis that this Court adopt the federal Daubert-Foret standards for admissibility of expert opinion evidence at the summary judgment stage. I disagree, however, with the majority's conclusion that the evidence submitted by plaintiffs and third-party plaintiffs (nonmovers in the motion for summary judgment) created a genuine issue of material fact, i.e., that Jenkins Shell overfilled the spare tank and this tank caused the plaintiffs' harm. The majority's error arises from its failure to appreciate that the nonmovers' evidence, i.e., Sunbeam's engineer's naked expert opinion, did not meet the requirement of LA.CODE CIV. P. art. 967 in that it did not "set forth specific facts showing that there is a genuine issue for trial" that Jenkins Shell overfilled the spare tank and that this tank caused the plaintiffs' harm. (emphasis added). See Monks v. G.E. Co., 919 F.2d 1189, 1192 (6th Cir.1990) ("[T]he issue of admissibility of an expert's affidavit is distinct from the issue of whether the affidavit is sufficient to withstand a summary judgment motion.") A party opposing summary judgment may not rely on bare ultimate expert conclusions to secure a free pass to trial.
Jenkins Shell filed its motion for summary judgment and supported its motion with the deposition of Mr. Cannon. Pertinent to the issues of whether Jenkins Shell overfilled the spare tank and whether this tank was the cause of plaintiffs' damage, Mr. Cannon testified that he did not remember when or where he last had the spare tank filled and that the spare tank had been used once or twice after it was allegedly overfilled but before the fire. As *238 the majority correctly points out, a party opposing summary judgment may not rest on the mere allegations or denials in his pleading. LA.CODE CIV. P. art. 967. Instead, his opposition, by affidavits or other evidence, must set forth "specific facts showing that there is a genuine issue for trial." Id. (emphasis added); see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 113 S.Ct. 2578, 2598, 125 L.Ed.2d 168 (1993) (explaining that "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict" and summary judgment is appropriate); Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421 (9th Cir.1995) (noting that an "expert opinion is admissible and may defeat summary judgment if it appears that the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit"); In re Agent Orange Prod. Liab. Litig., 818 F.2d 187, 193 (2d Cir.1987), cert. denied, 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988) (noting that to defeat summary judgment, expert affidavits cannot involve "mere speculation or idiosyncratic opinion"). Thus, federal jurisprudence has held that an expert's naked opinion, although admissible at trial, may not suffice to defeat summary judgment.[1]Hayes, 8 F.3d at 92 (concluding that the federal rules of evidence regarding expert testimony were not intended "to make summary judgment impossible whenever a party has produced an expert to support its position"). This results from the rigor of FED. R. CIV. P. 56(e), i.e., requiring the party opposing summary judgment to "set forth specific facts," compared with the wide latitude of FED. R. EVID. 703-705 governing expert testimony.
Sunbeam's expert opinion does not contain a scintilla of specific facts pertinent to the material claim at issue that Jenkins Shell overfilled the spare tank and that this tank was the cause of plaintiffs' harm. These are the only specific facts that bring Jenkins Shell into this litigation. A simple reading of the expert report and opinion reveals no facts to support an assertion that Jenkins Shell overfilled the spare tank or that a tank was even overfilled, but only argument, supposition, and bare conclusions concerning irrelevant details and general assertions to this claim. Simply stated, Sunbeam's expert opinion is nothing more than a simple assumption lacking any factual support that Jenkins Shell overfilled the spare tank and that this tank was the cause of plaintiffs' harm. The expert opinion assumes the ultimate fact in this claim, i.e., that Jenkins Shell overfilled that spare tank. (See Expert Report of Bill Baynes, Opinions # 9 & # 10).[2] There *239 are simply no facts in the Sunbeam expert opinion to create a question of fact that Jenkins Shell overfilled the spare tank. Indeed, as the trial court stated in its oral reasons for granting summary judgment:
There is no fact that I can find anywhere that indicates that [Jenkins Shell] overfilled that tank.
In fact, everything is to the contrary, that there is nothing shown that he overfilled the tank. Mr. Bains' [sic] report from my point of view isdoesn't even include the testing of a similar type of charbroil [sic] tank. But more importantly, there is nothing that indicates that Mr. Bains [sic], who wasupon whose report you are relying, that he did anything to show or based his opinion on any facts that had to do with exactly what happened at Jenkins Service Station as to the filling of the tank.
And, specifically, his deposition states categorically that, no, he doesn't know how it was filled....
In my view, opinions in expert affidavits do not automatically create a genuine issue of material fact. Given the codal dictate that summary judgment is "favored and shall be construed to accomplish these ends," I cannot agree that the evidence submitted by plaintiffs and third-party plaintiffs created a genuine issue of material fact that would defeat granting summary judgment in favor of Jenkins Shell. While an expert opinion is deemed admissible in opposing summary judgment, it should not defeat summary judgment when such an opinion is not grounded on specific facts that are material to the genuine issue for trial. Nonmovers have failed to establish a genuine issue of fact regarding their claims against Jenkins Shell, and the trial court properly granted summary judgment on those claims. Absent specific facts, the majority's conclusion does nothing more than frustrate this codal dictate and will render summary judgment practice a battle of baseless expert opinions. Accordingly, I respectfully dissent in part.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Federal Rule of Civil Procedure 56(e) is virtually identical to Louisiana Rule of Civil Procedure article 967. In fact, Official Revision Comment (a) to article 967 specifically states that "[t]his article is substantially the same as Fed. Rule 56(e)-(g)." FRCP 56(e) provides in pertinent part:

Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits....
[2] Federal Rule of Evidence 702 and La. C.E. art. 702 each provide:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.
[3] The four factors are whether or not the technique had been subjected to peer review and/or publication, the "known or potential rate of error," the existence of "standards controlling the technique's operation," the technique's "refutability" or testability, and an incorporation of the Frye general acceptance in the scientific community as only a factor in the analysis. Daubert, 509 U.S. at 594-95, 113 S.Ct. 2786. The Court also noted the other rules that the trial court must consider, such as Rule 703 and 706 and Rule 403's "balancing test." Id. at 596, 113 S.Ct. 2786.
[4] "The inadequacy of an affidavit is a `formal defect,' and the opponent waives the defect unless he or she files a motion to strike or otherwise objects to the affidavit." Maraist & Lemmon, supra at p. 144. Therefore, if a party feels an affidavit submitted in support or opposition to a motion for summary judgment would be inadmissible at trial, he or she should file a motion to strike.
[5] This comports with Maraist and Lemmon's suggestion that, rather than excluding all expert opinion evidence at the summary judgment stage, "[a] sounder approach may be to permit the expert's opinion which is based on material facts as to which there is no genuine dispute, although the expert has no personal knowledge of those facts." Maraist & Lemmon, supra, p. 144.
[6] Evidence is either direct or circumstantial. Direct evidence is evidence which, if believed, proves a fact. Circumstantial or indirect evidence is evidence which, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists. See Cleary, McCormick on Evidence, § 185 West (2nd ed.1972); Wigmore, Law of Evidence, § 25 (3rd ed.1940).
[7] Evidently, storing a spare tank underneath the grill is contrary to Sunbeam's express operating instructions and the warnings on propane tanks. The jury may view Mr. Cannon's testimony that the flames originated from the Sunbeam tank and not the spare tank as an attempt to escape responsibility for the fire.
[1] See Williams v. Ford Motor Co., 187 F.3d 533, 543 (6th Cir.1999) (holding that to defeat summary judgment an expert's opinion must be more than a conclusory assertion about ultimate legal issues); Huey v. United Parcel Serv., Inc., 165 F.3d 1084, 1087 (7th Cir.1999) (stating that an expert must "substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless"); Boyd v. State Farm Ins. Co., 158 F.3d 326, 331 (5th Cir.1998) (affirming the court's position that, in the context of summary judgment, FED. R. EVID 705 requires an expert's affidavit contain factual support for the opinion expressed therein); Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir.1993) (emphasizing that although "expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues"); Richardson v. Richardson-Merrell, Inc., 857 F.2d 823, 829-32 (D.C.Cir.1988) (holding that an expert's declaration, full of assertion but empty of facts and reason, will not defeat a motion for summary judgment, for the trial court must "look behind [the expert's] ultimate conclusion ... and analyze the adequacy of its foundation") Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir.1989).
[2] Opinions # 9 & # 10 of Mr. Baynes' expert report state:

9. It is not foreseeable that a liquid propane cylinder would be overfilled as this practice is in contravention to all published guidelines, industry standards, regulations and the law.
10. The only way a cylinder can be overfilled in [sic] through the filler's failure to exercise reasonable care in filling of the cylinder.