|, PLOTKIN, J.,
dissenting with written reasons.
This case presents important issues relative to the liability of defendants, a group of interrelated companies that owned, developed, maintained, marketed and managed a condominium complex located at 700 South Peters Street in the City of New Orleans, to whom I will refer collectively as “Standard/700 Associates.” The condominium complex contains a sixth floor unit purchased by plaintiff J. Elise Shelton. Ms. Shelton essentially claims that the condominium she purchased is not “fit for ordinary use” — i.e., to serve as a residence — because of persistent, reoccurring leaks in the ceiling caused by a defective roof and defective drainage. The trial court dismissed Ms. Shelton’s claims against Standard/700 Associates on a motion for summary judgment. Based solely on a waiver of warranty contained in the Initial Public Offering Statement, Purchase Agreement, and Act of Sale, the majority affirms the trial court’s granting of the motion for summary judgment, dismissing Ms. Shelton’s case.
I respectfully dissent from that decision. The affirmation of the summary judgment in this case has far-reaching implications beyond the parties to this controversy. The effect of the majority’s decision is that Ms. Shelton’s rote signing of contracts containing waivers of warranty and “as is” clauses trumps traditional Louisiana legal principles relative to contract law that classically have |¡>been found to invalidate those waivers. In fact, Ms. Shelton will be tragically denied an opportunity to present evidence and arguments to prove her claim that her signature was secured by fraud and ill practices, which she properly pled in this case.
*1270 On September 4, 1996, Ms. Shelton and Standard/700 Associates entered into an Act of Sale for condominium 617 at 700 South Peters Street. The Initial Public Offering, the Purchase Agreement, and the Act of Sale contained the waivers of warranty quoted in the majority’s decision.
Ms. Shelton began to move into unit 617 approximately one week after the act of sale. However, sometime in early November 1996, Ms. Shelton and her husband began to notice the unexplained presence of water in different areas of the condominium, which they were eventually able to attribute to leaks in the ceiling. Unit 617 is situated on the top floor of the condominium complex, directly below a rooftop common area equipped with hot tub, swimming pool and several large planters, holding green plants for landscaping purposes.
Ms. Shelton stated in her deposition that the leaks in the ceiling of her condominium have caused her and her family numerous losses of property, as well as mental anguish and emotional distress. The contents of the apartment suffered extensive water damages, she said, and the smell caused by the constant dampness in the condominium was nauseating. Ms. Shelton testified that chunks of plaster have fallen from the ceilings, and that one large piece of plaster struck her newborn baby.
Ms. Shelton sought the assistance of the management of the condominium complex to remedy the problem with the leaking roof. Ms. Shelton and her family actually moved out of the condominium for a couple of months in early 1997 to allow the condominium management an opportunity to repair the leaks. However, |3when they returned to the condominium in May of 1997, the problems with the leaks were still present.
On April 7, 1997, Ms. Shelton filed a Petition for Damages against Standard/700 Associates, seeking redhibition and recission of the sale of the condominium, as well as damages under Louisiana’s redhibition articles. On September 4, 1997, Ms. Shelton filed a “First Supplemental and Amended Petition,” adding as defendants Aldon Guichard and 700 South Peters Owners Association, and asserting claims sounding in fraud and misrepresentation. On June 8, 1998, Standard/700 Associates filed a Motion for Summary Judgment, seeking dismissal of Ms. Shelton’s suit. On June 8, 1998, the trial court issued a partial final judgment granting the motion for summary judgment; the trial judge issued no reasons for judgment. On appeal, Ms. Shelton alleges that the trial court erred in dismissing her claim.
The standard of review on appeal for summary judgments is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 280; Industrial Pipe, Inc. v. Cole, 99-2965 (La.App. 4 Cir. 9/13/00), 769 So.2d 680. A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1). Pursuant to the 1996 amendments to La. C.C.P. art. 966, summary judgments are now favored, and the rules regarding such are to be liberally applied. La. C.C.P. art. 966(A)(2). The non-moving party may no longer rely on the allegations in its pleadings in opposing a summary judgment. La. C.C.P. art. 966(C)(2). If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact, and the motion should be granted. La. C.C.P. art. 966 C(2); Babin v. Winn-Dixie Louisiana, Inc., 2000-0078, p. 4 (La.6/30/00), 764 So.2d 37, 40.
LApplying the above standards to the facts of this case, I would reverse the trial court judgment granting summary judgment in favor of Standard/700 Associates. In support of its motion for summary judgment, Standard/700 Associates simply pointed to the waiver of warranty provisions in the Initial Public Offering, Pur *1271 chase Agreement, and Act of Sale. While those provisions are arguably sufficient to establish Standard/700 Associate’s initial burden of proof in a summary judgment proceeding, I believe that Ms. Shelton presented sufficient evidence to overcome that burden of proof, when her claims are properly analyzed as below under the correct legal principles. Accordingly, I would deny Standard/700 Associates’ motion for summary.
In its memorandum to the trial court filed in support of its motion, Standard/700 Associates asserted that it was entitled to summary judgment on Ms. Shelton’s “red-. hibition” claims because the Initial Public Offering, the Purchase Agreement, and the Act of Sale all contained provisions whereby Ms. Shelton was required to waive any and all of her rights to redhibition. Standard/700 Associates argued that the evidence attached to its motion for summary judgment was sufficient to prove that all of the requirements for validly excluding warranties were met in this case.
However, Ms. Shelton has asserted that her signature on the documents containing the waiver of redhibition provisions was obtained by fraud and misrepresentation on the part of those representing Standard/700 Associates at the time of the sale, notably Ms. Guichard. Ms. Shelton claims that the fraud and misrepresentations invalidate the waiver of warranty provisions in the sales documents.
La. C.C. art. 2524, relative to the implied warranty that the thing sold is “fit for ordinary use,” is the appropriate article found in the redhibition section of the Louisiana Civil Code to control this controversy. That article, which became |fieffective on January 1, 1995, the year before Ms. Shelton purchased her condominium, states as follow:
A thing sold must be reasonably fit for its ordinary use. When the seller has reason to know the particular use the buyer intends for the thing, or the buyer’s particular purpose for buying the thing, and that the buyer is relying on the seller’s skill or judgment in selecting it, the thing sold must be fit for the buyer’s intended use or for his particular purpose.
If the thing is not so fit, the buyer’s rights are governed by the general rules of conventional obligations.
1993 Revision Comments (b) explains La. C.C. art. 2524 as follows:
Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer’s action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects.
Since La. C.C. art. 2524 became effective on January 1, 1995, no Louisiana court has specifically addressed this issue of the law applicable to claims that a thing sold is not “fit for ordinary use .” However, the above article and comment clearly state that the rules governing breach of contract actions should apply to such cases. Thus, I would find that the redhibition articles, found in Title VII of Book 3 of the Louisiana Civil Code, do not apply to the facts alleged by Ms. Shelton in the instant case. Instead, the conventional obligations articles apply; those articles are found in Title VI of Book 3 of the Louisiana Civil Code, La. C.C. arts.1906 through 2057.
La. C.C.P. art. 2031, found within the general articles governing conventional obligations, provides as follows:
A contract is a relative nullity when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
(Emphasis added.) Thus, a contract is considered a relative nullity if grounds for vitiating consent exist.
*1272 |(¿La. C.C. art. 1948 states that contractual consent may be vitiated “by error, fraud, or duress.” Error sufficient to vitiate consent is described by La. C.C. art. 1949 and 1950 as follows:
Art. 1949. Error vitiates consent
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Art. 1950. Error that concerns cause
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
Fraud sufficient to vitiate consent is further described by La. C.C. art. 1953, as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
When a party pleads fraud or mistake, La. C.C.P. art. 856 states that “the circumstances constituting fraud or mistake shall be alleged with particularity.”
Ms. Shelton’s “First Supplemental and Amended Petition” in the instant case states, in pertinent part, as follow:
10.
Prior to the sale of the subject condominium unit on September 4, 1996, defendant Guiehard unequivocally vouched for the soundness of the roof of the subject condominium complex at 700 S. Peters stating that there had been no leaks and specifically there had been no leaks in Unit 617 which unit was purchased by plaintiff.
11.
Further, defendant Guiehard has represented both the original named defendants and the 700 S. Peters Owners Association in the defendants’ negligent attempts to repair the leaking condominium roof and Unit 617’s ceiling.
[[Image here]]
14.
Plaintiff expressly pleads that fraud and intentionally [sic] misrepresentation occurred to induce the plaintiff to purchase Unit |7617 of the 700 S. Peters condominium complex in that the state of the roof of the complex and the previous leaks into condominium units were known by defendants and intentionally concealed from the plaintiff prior to purchase.
As the above excerpts show, Ms. Shelton met the requirement that “the circumstances constituting fraud or mistake ... be alleged with particularity.”
Moreover, Ms. Alexander attached to her opposition to the motion for summary judgment her own deposition, wherein she stated relative to her fraud/misrepresentation claim, as follows:
Q. Do you own any of the common area?
A. It says in there one point something percent. I personally — when we moved in, I specifically asked Alden [Aldon Guiehard] if the roof leaked. She said, no, they had never had any roof leaks. Since our roof started leaking, Tommy told me they have had other leaks on the sixth floor and there have been roof leaks. That’s why we moved out of the Quarter is because the ceiling was leaking and they cut a big hole in it. I did not want to do that again. I was not going to tolerate that there while I was renting. And I did not want it in the apartment. She said the roof was very good. It was guaranteed for twenty *1273 years. It was ten years old. So there should be another ten years without any problem with it. So I feel like I have — under false pretenses. And granted, maybe she didn’t know about it. But somebody there knew about it.
Moreover, Standard/700 Associates failed to present any evidence in support of its motion for summary judgment to contradict Ms. Shelton’s assertion that representatives of Standard/700 Associates fraudulently concealed the roof problems from her prior to her purchase of the condominium. The only evidence attached to Standard/700 Associates’s motion for summary judgment was a document entitled “Statements of Uncontested Material Facts,” which essentially sets out the waiver provisions in the sales documents, a copy of the Public Offering Statement for 700 South Peters Condominium, a copy of the Agreement to Purchase, a copy of the Act of Sale, and a copy of Ms. Shelton’s deposition from which I have quoted above. That evidence is not sufficient “to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense,” as required by La. C.C.P. art. |S966(C)(2) because that evidence does not address Ms. Shelton’s fraud/misrepresentation claim. Thus, Standard/700 Associates is not entitled to summary judgment on the basis of the exclusion of warranty provision in the purchase agreement and act of sale.
Accordingly, I would reverse the trial court judgment granting the motion for summary judgment in favor of Standard/700 Associates, and remand to the trial court for further proceedings.