1 .BROWN, J.
Plaintiff, Joycelyn Hartley, and her seven-month-old daughter were seriously injured in an automobile accident occurring at the intersection of the Stubbs-Vinson Road and U.S. Highway 80 in Ouachita Parish. She and her husband, Darron Hartley, individually and on behalf of the minor child, filed suit against several defendants, including the State Department of Transportation (“DOTD”), Ouachita Parish and their respective insurers, Core-gis Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA, alleging that the intersection was obstructed by vegetation and was inadequately signed,[1] both of which were causes of the accident. Concluding that plaintiffs could not establish negligence or causation, the trial court granted defendants’ (DOTD, Ouachita Parish and their insurers’) motions for summary judgment. Plaintiffs and intervenors have appealed.[2] We reverse and remand.

Facts

On May 23, 1994, Joycelyn Hartley was driving a Toyota Tercel south on the Stubbs-Vinson Road in Ouachita Parish when she entered U.S. Highway 80 and was struck by a westbound 1979 Ford pickup truck driven by Robert Mims. The occupants of the pickup truck state that Mrs. Hartley failed to stop at the intersec *152 tion. The accident resulted in serious injuries to Mrs. Hartley and her seven-month-old daughter, Melody Hartley, who is a paraplegic as a result of the collision.
| i>The Stubbs-Vinson Road consist of two lanes running north and south. It is bordered on both sides by drainage ditches and pecan orchards. Ouachita Parish is responsible for the maintenance and signage of the Stubbs-Vinson Road. The parish placed a “STOP AHEAD” sign for southbound traffic approximately 1,155 feet from the Highway 80 intersection.
At the Highway 80 intersection, DOTD had placed a 30 inch “STOP” sign controlling southbound traffic on the Stubbs-Vin-son Road. DOTD is responsible for the maintenance of Highway 80 and signs at its intersections. Continuing across Highway 80 approximately 220 feet, the Stubbs-Vinson Road ends in a “T” intersection with the Huenefeld Road. Significantly, there is a “STOP” sign at this “T” intersection for southbound traffic on the Stubbs-Vinson Road.
Mrs. Hartley is unable to remember the accident or her approach to the intersection. According to her deposition, this was the first time Mrs. Hartley had driven that part of the Stubbs-Vinson Road where it intersects with Highway 80. The last thing she remembers is turning on the Stubbs-Vinson Road and crossing a railroad track four miles north of the Highway 80 intersection.
State Trooper Charles D. Harris, who investigated the accident, testified in his deposition that on the date of the accident the stop sign at the Highway 80 intersection was not obscured by any overgrowth of vegetation as alleged by plaintiffs; however, he did not specify at what distance the sign became clearly visible.
Plaintiffs contend that the trial court erred in granting summary judgment based upon its credibility assessment of Trooper Harris’s statement. They contend that their evidence shows that the Highway 80 stop sign was too small, that the line of sight to the stop sign was obstructed by vegetation and that the second stop sign at the Huenefeld Road intersection, located some 200 feet beyond the accident scene, was the only stop sign visible upon passing the “STOP AHEAD” sign located 1,155 feet 1¡^before the Highway 80 intersection. Plaintiffs also assert that because of overhanging limbs, abundant vegetation and an abandoned house, a motorist focusing on the Huenefeld Road stop sign could easily enter the Highway 80 intersection without stopping and, further, that the view of a motorist westbound on Highway 80 of an approaching car from the Stubbs-Vinson Road would be obstructed.
Included in plaintiffs’ opposition to the motion for summary judgment was a videotape made by Darron Hartley the day following the accident in which he drove south on the Stubbs-Vinson Road to the Highway 80 intersection. This tape was interpreted by plaintiffs’ expert, James Clary, who opined that this tape showed an obscured intersection. Additionally, fact witnesses who frequently traveled the area testified by deposition that because of the vegetation, they focused on the Huene-feld Road stop sign and would miss the stop sign at Highway 80.
Plaintiffs also submitted deposition testimony showing that the parish began mowing and clearing the Stubbs-Vinson roadside the day following the accident (but after the video was taken). The parish admitted to the trimming as a part of scheduled routine maintenance. Additionally, plaintiffs showed that the DOTD moved the “STOP AHEAD” sign half the distance to the intersection and increased *153 the size of the Highway 80 stop sign to 86 inches within two weeks of the accident.[3]
DOTD and the parish filed motions in limine and objected to the introduction of the video portion of the Hartley tape, contending, among other things, that the camera was set on zoom and that the color was out of balance. Thus, they claimed that the video inaccurately depicted the visibility or lack thereof of the stop sign at the Highway 80 intersection. The trial court did not rule on the motions in limine. Defendants, however, did not object to the audio portion |4of the tape. Their expert, Bill Krone, analyzed the audio portion of the tape and concluded that, although the Huenefeld Road stop sign is the first visible stop sign, the stop sign at the intersection of Highway 80 became visible within 600 feet before the Highway 80 intersection and that the Hartley vehicle, traveling at 45 miles per hour, the speed limit of the Stubbs-Vinson Road, only required 300 feet to stop. Accordingly, they contend that Mrs. Hartley had ample time to stop her vehicle after the sign became visible.
The trial court granted defendants’ summary judgment motions, concluding that plaintiffs had not shown negligence and had not proven causation. The ruling was based on three considerations: (1) Mrs. Hartley could not remember the accident or her approach to the intersection; (2) The people in the other vehicle stated that Mrs. Hartley ran the stop sign; and, (3) Trooper Harris, who investigated the accident, stated in his deposition that the stop sign was not obscured by overgrowth.

Discussion

No one questions that Mrs. Hartley ran the stop sign at the Highway 80 intersection. It is also clear that the trial court accepted Trooper Harris’s statement, to the exclusion of all other evidence, that the stop sign was not obscured. At one point during plaintiffs’ argument about their expert’s interpretation of the videotape, the trial court stated: “You’re discounting the testimony of the Trooper? You’re saying that the video is the only evidence?” In his oral opinion, the trial court remarked that:
The Trooper of course as stated by counsel has no interest in this case. I mean he’s impartial. Has no concern of the outcome of the case I’m sure ... He says that it (the Highway 80 stop sign) was not obscured based on his investigation, that is the official investigation in this case.
We note several important underlying principles concerning summary judgment. Because summary judgment deprives litigants of the opportunity to | ^present their evidence to a jury or fact-finder, it should be granted only when it is shown that there are no genuine questions of material fact. The trial court shall not make credibility determinations on summary judgment motions, including an evaluation of the persuasiveness of competing scientific studies, but must assume that all of the affiants are credible. Finally, the court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Independent Fire Inszirance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226.
The decision to accept Trooper Harris’s disputed testimony in lieu of other testimony, be it expert or lay testimony, constitutes a credibility determination. In doing so, the trial court was in error. Even so, this does not conclude our consideration. Appellate courts review summary judg *154 ments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991); Solomon v. Taylor Brokerage Services, Inc., 33,832 (La.App.2d Cir.10/04/00), 768 So.2d 799. Because our review of the grant of a motion for summary judgment is de novo, we must, regardless of the trial court’s error, determine whether the record demonstrates that there are no disputed issues of material fact and that defendants are entitled to summary judgment as a matter of law.
The elements necessary to impose liability upon a public entity based on a defective condition of a roadway are the same whether based on negligence or strict liability. Faulkner v. State, Dept. of Transportation & Development, 25,857 (La.App.2d Cir.10/26/94), 645 So.2d 268, writ denied, 94-2901 (La.01/27/95), 649 So.2d 390. Under either theory, the plaintiff must prove: (1) that the defendant owned or had custody of the thing which caused the damage; (2) that the thing was defective in that it created an unreasonable risk of harm to others; (3) |fithat the defendant had actual or constructive knowledge of the defect or risk of harm posed thereby and failed to take corrective measures within a reasonable time; and (4) causation. Id. at 273.
Defendants pointed out to the court a lack of factual support or evidence of causation. Accordingly, in order to find that there is no issue of material fact and grant defendants’ motions, the court must find that plaintiffs failed to produce factual support sufficient to satisfy their evidentiary burden at trial. La.C.C.P. art. 966(C)(2).
La.C.C.P. art. 967 provides, in pertinent part, that:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
It is now settled in Louisiana that expert opinion evidence in opposition to a motion for summary judgment is allowed if it qualifies under Daubert-Foret standards.[4] In summary judgment proceedings the court must not focus on the persuasiveness of the expert’s conclusion but only on whether the methodology employed in reaching his opinion meets with Dauberb-Foret’s scrutiny. If the methodology meets this scrutiny and the expert’s opinion is on a material fact and allows a reasonable juror to believe that it is more likely than not true, then the |7motion should be denied and the issue be decided at trial. Independent Fire Insurance Co., supra.
In this case, the expert opinion was grounded on specific facts that are materi *155 al to an issue at trial, i.e., the condition of the roadway as it existed at the time of the accident. The methodology utilized by both plaintiffs’ and defendants’ experts met DauberF-Foret standards.
Although stating that the Highway 80 stop sign was visible to a southbound motorist, Trooper Harris does not indicate how far from the stop sign he determined that its visibility was unobstructed. The trooper could not recall whether he checked if the visibility was unobstructed from the “STOP AHEAD” sign. Plaintiffs do not contend, nor are they required to show, that the sign was totally obstructed to a southbound motorist. In order to defeat the motions for summary judgment, plaintiffs’ burden was simply to produce evidence sufficient to create a material issue of fact with respect to causation, that is, to produce evidence from which a reasonable juror could conclude that it is more likely than not that the circumstances regarding the placement and visibility of the signs, combined with roadside conditions, caused Mrs. Hartley to miss seeing the Highway 80 stop sign and safely stop her vehicle.
Defendants contend that it is mere speculation that a cause of the accident was the positioning of the various signs and overgrown vegetation because Mrs. Hartley cannot relate what she saw or knew as she approached the intersection. While Mrs. Hartley’s inability to remember what happened makes plaintiffs’ burden difficult, plaintiffs may present circumstantial evidence that the placement of the signs and roadway conditions were a probable cause of the accident. See, e.g., Independent Fire Insurance Co., supra. In the Independent Fire case, the court allowed the use of circumstantial evidence by experts to construct a reasonable scenario of what caused the fire. In the instant case, plaintiffs contend |sthat the expert testimony interpreting their videotape, as well as additional lay testimony, shows that it was more probable than not that Mrs. Hartley was misled by the faulty placement of the “STOP AHEAD” sign, the prominent visibility of the Huenefeld Road stop sign and the temporary invisibility of the Highway 80 stop sign such that, as a first-time motorist on the road, she failed to focus on the Highway 80 intersection. Even if a jury could conclude that these circumstances were only a partial cause of the accident, plaintiffs would be entitled to recover damages.
Accordingly, we hold that there are genuine issues of material fact and summary judgment is inappropriate. We reverse and remand. Costs are assessed to defendants-appellants as allowed by law.
REVERSED and REMANDED.

. The other defendants, including the cities of Monroe and West Monroe, the manufacturer of the child’s car seat and the adjacent landowners/lessees, were exculpated in pre-trial discovery.

. The driver and passenger of the other vehicle, Robert Mims and Ralph Howard, along with their respective spouses, intervened, aligning themselves with the plaintiffs on the grounds that the intersection was improperly maintained and that the views of the respective drivers were obstructed, preventing them from avoiding the collision. On appeal they adopt the argument of the plaintiffs-appellants.

. Defendants objected to the mention of these actions as inadmissible subsequent remedial measures. The trial court did not rule on this particular objection.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993).