ROLAND L. BELSOME, Judge.
_JjPlaintiffs-Appellants appeal the trial court’s grant of Defendants-Appellees motion for summary judgment. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
Plaintiffs-Appellants, Randall Hurst and his wife, Sheila Hurst, alleged that on February 22, 2005,[1] while guests at the Hilton *354 New Orleans Riverside Hotel (“Hilton”), they attempted to exit an elevator on the sixteenth floor when it malfunctioned and pinned them between the doors.[2] Appellants asserted that they sustained multiple injuries as a result of the incident.[3] Appellants filed suit against Defendants-Ap-pellees[4] on February 6, 2006. Appellants’ claims included allegations that Appellees were negligent in failing to maintain the elevator in a safe condition; that the elevator presented an unreasonable risk of harm; that Appellees negligently activated the fire panel, which caused the elevators to stop ^immediately and the doors to slam shut; that Appellees failed to warn of a dangerous condition; and that Appellees failed to exercise due care. Appellants also alleged that Appellees were negligent in allowing guests to use an elevator which had a disconnected smoke detector.
On October 12, 2009, Appellees re-urged a motion for summary judgment[5] that had previously been filed on May 27, 2009,[6] asserting that Appellants failed to come forward with evidence demonstrating a defect in elevator numbers four or five which presented an unreasonable risk of the doors pinning exiting passengers between the closing doors about which any of the Appellees knew or should have known. Appellees submitted affidavits from Roger Lawson, the Assistant Director of Hotel Property Operations, engineering department; Kevyn Lewis, the hotel security officer; Frederick W. Sawyers, III, the hotel manager; and Paul Buckley, the former hotel resident manager. In the opposition, Appellants submitted an affidavit from their expert engineer, Dr. Jack W. Sparks, who attested that Hilton elevator numbers four and five were defective in multiple aspects.
On November 20, 2009, the trial court granted Appellees’ motion for summary judgment.[7] This appeal followed.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. independent Fire Insurance Company v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230.
DISCUSSION
Appellants set forth four assignments of error, all of which essentially assert that the trial court erred in finding that no genuine issues of material fact existed and *355 in granting Appellees’ motion for summary judgment.
Appellees submit that pursuant to La. C.C. art. 2317.1, a cause of action in either negligence or strict liability against a premises owner must prove 1) that the defendant knew or should have known of the alleged defect; 2) that the damage could have been prevented by the exercise of reasonable care; and 3) that the defendant failed to exercise such reasonable care. Appellees argue that no actual notice of any alleged defect was proved, nor was there evidence presented which demonstrated constructive notice of any alleged defect, because Appellants did not establish that the alleged condition of the elevator doors pinning exiting passengers existed for a sufficient length of time such that it would have been discovered by the exercise of reasonable care.
In support of the assertion that no notice was established, Appellees reference a December 2004 report generated by Lerch Bates and Associates, Inc., the company that performs the hotel’s annual elevator system audit and inspection. Appellees emphasize that the inspection revealed no condition that would cause the doors of elevator number four or five[8] to suddenly close and pin an individual between the doors. This inspection, as well as the inspection of the hotel’s fire alarm system (the inspection was conducted by Pratt Landry Associates, Inc., who |4performed the preventive maintenance and service of the hotel’s alarm system), were both coordinated through the hotel’s Property Operations Department. The Property Operations Department maintained records and reports from Lerch Bates, Pratt Landry, and other contractors. In addition to the hotel’s Property Operations Department, Lerch Bates also provided a copy of its report from the December 14, 2004 inspection to Schindler Elevator Corporation,[9] the company that performed preventive maintenance, adjustment, repair and service of the hotel elevators, 67 days prior to the alleged incident.
Appellees further submit that the Property Operations Department had no record of an incident on February 22, 2005, or any time during the previous year involving an activation of the fire alarm system and/or the passenger elevators not functioning as manufactured, as evidenced by the affidavit of Roger Lawson, who served as the Assistant Director of Property Operations at the Hilton continuously for twelve years. Furthermore, Appellees emphasize that Fred Sawyers,[10] Paul Buckley,[11] and *356 Kevyn Lewis[12] attested in their affidavits that they never received any report or information about the function of the audible alarm, the door closing speed, or the door stall pressure of either elevators number four or five, other than the Lerch Bates report.
| sSimilarly, Roger Lawson attested in his affidavit that he was aware of the December 13-14, 2004 Lerch Bates inspection, and that on December 17, 2004, Lerch Bates provided a copy of its inspection, audit report, performance criteria, and immediate action items to Schindler Elevator Corporation. Mr. Lawson further attested that Schindler promised to immediately correct any deficiencies, as evidenced by email correspondence, attached as an exhibit to the affidavit.[13] Other than the Lerch Bates December 2004 report, Mr. Lawson attested that, based upon his review of Property Operations Department records and his personal knowledge, the Property Operations Department did not receive any report or information regarding the function of the audible alarm, the door closing speed or the door stall pressure of either of passenger elevators numbers four and five.
Appellees also assert that nothing in the Lerch Bates report regarding the function of the audible alarm, door closing speed, or door stall pressure is indicative of a risk of elevator doors pinning guests who are attempting to exit the elevators. Furthermore, between December 17, 2004 and February 22, 2005, Appellees insist that the audible alarm, the door closing speed, and the door stall pressure of elevator numbers both four and five appeared to be operating properly.
Appellants argue that the information contained in the affidavit from their expert, Dr. Jack W. Sparks, was sufficient to overcome summary judgment. Dr. Sparks attested in his affidavit that he reviewed the depositions of Sheila Hurst and Randall Hurst; Appellees’ Answers to Interrogatories; Appellees’ responses to Appellants’ Requests for Production; Supplemental Answers to Interrogatories from Appellees; and the affidavits from Roger Lawson, Frederick Sawyers, Kevyn 1 fiLewis, and Paul Buckley. Dr. Sparks attested with regard to his opinion that, based upon information contained within the Lerch Bates report, elevators four and five were defective in multiple aspects, and that Appellants’ injuries were a reasonably foreseeable consequence of these defects:
That the complete December 14, 2004, report of Learch [sic] Bates (i.e., Hilton numbers 0295 — 0432) clearly demonstrates/indicates that the subject elevators (i.e., Hilton elevators Numbers 4 and 5) were defective in multiple aspects.
That the aforementioned defects are expected to manifest themselves intermittently, in various ways, such that said defects will not manifest themselves on a continual basis and/or in the same way. That, based on all scientific probability as well as the documents referenced *357 above, the elevator event, as described by Randall and Sheila Hurst in their aforementioned depositions, (i.e., the forceful closing of the elevator doors and/or the accident/incident complained of as causing injuries to Randall and Sheila Hurst in the above identified lawsuit) is a natural and reasonably foreseeable consequence of the defects referenced above.
Furthermore, based upon all scientific probability, the said defects are of such nature as to constitute a dangerous condition, as described above, which is reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.
Dr. Sparks further attested that “no actions were taken” by Hilton, Schindler, Lerch Bates or Pratt Landry to correct the alleged defects prior to the alleged February 22, 2005 incident. Dr. Sparks further attested that the affidavits of Mr. Lawson, Mr. Sayers, Mr. Lewis, and Mr. Buckley attesting to observations of elevators four and five to be working properly “is not an indication that said elevators were not defective at the time those affi-ants purportedly observed same, in accord with the foregoing.”
| ^Accordingly, Appellants demonstrated a genuine issue of material fact, as Dr. Sparks’ affidavit contradicts the information contained in the affidavits of Mr. Lawson, Mr. Sayers, Mr. Lewis, and Mr. Buckley with regard to whether elevator number four or five was functioning normally at the time of the alleged incident. Additionally, although Mr. Sparks’ affidavit does not indicate which specific findings in the Lerch Bates report established a defect of elevator number four or five, we find that Appellants’ expert affidavit, at a minimum, established a genuine issue of material fact with regard to whether Defendants-Appellees knew or should have known of an alleged elevator defect which could have caused the elevators to malfunction in the manner asserted by Appellants. Accordingly, issues of material fact existed sufficient to overcome summary judgment under these particular facts and circumstances, and the trial court erred in granting same.
CONCLUSION
For the foregoing reasons, the trial court’s grant of summary judgment in favor of Defendants-Appellees is reversed, and the matter remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED

. Appellants alleged in the original petition for damages that the incident occurred on February 27, 2005; however, the hotel incident report is dated February 22, 2005. Appellants reference February 22, 2005 as the *354 date of the alleged incident in their appellate brief.

. Appellants alleged that they exited the elevator side-by-side.

. Appellants' injuries alleged in the petition for damages included multiple bruises and abrasions; internal injuries; strain and sprain of the neck and back area; severe headaches; herniated and bulged discs; left arm pain and dizziness.

. Appellants' original petition for damages asserted claims against Hilton Hotels Corporation, Fred W. Sawyers, Paul Buckley, and Kevyn Lewis. Appellants thereafter amended the petition, adding as defendants International Rivercenter Lessee, L.L.C., Schindler Elevator Corporation, Lerch Bates, Inc., and Pratt Landry Associates, Inc., and ACE American Insurance Company.

. The motion for summary judgment was filed on behalf of Hilton Hotels Corporation, Fred W. Sawyers, Paul Buckley, Kevyn Lewis, International Rivercenter Lessee, L.L.C., and ACE American Insurance Company ("Appel-lees”).

. After a hearing on the original motion for summary judgment, the trial court denied the motion on July 21, 2009, without prejudice, allowing it to be re-urged in 60 days.

. There are not written reasons for judgment or a transcript of the proceedings in the appellate record.

. Roger Lawson attested in his affidavit that based upon Mrs. Hurst’s description in her deposition, Mrs. Hurst identified elevator number four or five as the elevator involved in the alleged incident. Appellants' brief and expert affidavit also reference elevators number four and five as the subject elevators.

. Appellees submit that at least one elevator technician from Schindler was at the hotel every weekday during normal business hours, excluding holidays, and that Schindler also provided 24-hour service when necessary.

. Fred Sawyers attested in his affidavit that he was the hotel manager during the time period of January 1, 2004 and February 22, 2005; that he received no report or information between December 17, 2004 and February 22, 2005 regarding a function or malfunction of an alarm; that Schindler coordinated the maintenance and service of the hotel elevators and records regarding same during the relevant time periods; that he did not receive any report or information of persons being struck or becoming stuck between the doors of passenger elevator number four or five; that he did not receive any report or information regarding the door closing speed or the door stall pressure of either passenger elevator number four or five; and that he received no report or information on February 22, 2005 or any time during the previous year of an activation of the fire alarm system in which the passenger elevators did not function as manufactured.

. Paul Buckley’s affidavit is substantially similar to that of Fred Sawyers, except that Paul Buckley was the resident manager of the hotel at the time.

. Kevyn Lewis’ affidavit is substantially similar to that of Fred Sawyers and Paul Buckley, except that Kevyn Lewis was the hotel's security guard at the time of the alleged incident.

.The email correspondence, dated December 17, 2004, is from tom_snyder@us. schindler.com; Larry Imhoff is carbon copied on the message. The subject line reads "Re: Immediate Action Items — December 2004 Audit” and an indication that "[tjhese [immediate action] items will be addressed ASAP. Larry Imhoff was the hotel’s Director of the Property Operations Department at the time of the alleged incident.