# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 15-807


SQUARE MILE ENERGY, LLC

VERSUS

PAUL ROY POMMIER, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 96229
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


John F. Craton
Barousse & Craton, LLC
P. O. Box 1305
Crowley, LA 70527-1305
Telephone: (337) 785-1000
COUNSEL FOR:
    Defendant/Appellee - Paul Roy Pommier

Jeremy B. Shealy
Ross F. Roubion
Onebane Law Firm
P. O. Box 3507
Lafayette, LA 70502-3507
Telephone: (337) 237-2660
COUNSEL FOR:
    Defendant/Appellant - Roxanne Pommier

**Jamie S. Manuel**
**Mayhall & Blaize, LLC**
**5800 One Perkins Place Drive, Suite 2-B**
**Baton Rouge, LA 70808**
**Telephone:  (225) 810-4998**
**COUNSEL FOR:**
     **Plaintiff/Appellee - Square Mile Energy, LLC**

**THIBODEAUX, Chief Judge.**

This appeal arises from a concursus proceeding initiated by Square Mile Energy, LLC, ("Square Mile") against Paul Roy Pommier and Roxanne "Rox" Pommier. Square Mile operates a drilling unit on property that was the subject of an agreement entitled "Partition of Community Property" ("Partition Agreement" or "Agreement") signed by Paul and Roxanne in 2010 following their divorce in 2007. One provision of the Partition Agreement grants Roxanne a 9.84 acre piece of land known as "Tract 2" and includes the following clause ("N.B. Clause"): "N.B.: Included in this transfer are any and all mineral rights, when available, to Rox G. Pommier and all surface rights." Paul and Roxanne disagree on whether the transfer includes an interest in a mineral servitude that Paul inherited as a co-owner in indivision with his siblings.

When Paul and Roxanne were unable to resolve their disagreement on ownership of the mineral rights, Square Mile filed this suit. The trial court ruled that the phrase "when available" rendered the N.B. Clause ambiguous, and then determined, based on parol evidence, that Roxanne and Paul did not intend to transfer ownership of Paul's interest in the mineral servitude to Roxanne. For the following reasons, we affirm.

I.

**ISSUE**

We must decide whether, by including a clause stating "N.B.: Included in this transfer are any and all mineral rights, when available, to Rox G. Pommier and all surface rights[,]" Paul and Roxanne intended to transfer a portion

of the mineral interest co-owned by Paul in indivision with his siblings to Roxanne.

II.

**FACTS AND PROCEDURAL HISTORY**

Paul and Roxanne were married from 1986 to 2007. In 2001, a Judgment of Possession in the Succession of Noelia L. Pommier ("Judgment of Possession" or "Judgment") granted Paul and each of his four siblings a tract of land, with Paul inheriting a 9.84 acre tract known as "Tract 1." Paul and his siblings also each inherited a one-fifth interest in a mineral servitude burdening all five tracts of land.

Tract 2 was initially inherited by Paul's brother Luby. Ownership of Tract 2 and Luby's one-fifth interest in the mineral servitude passed to Luby's daughters (Paul's nieces), Sue and Deborah Menard, when Luby died. Roxanne and Paul purchased Tract 2 from Sue and Deborah in 2002. However, the sale agreement included a clause in the property description stating: "N.B. All minerals and mineral rights are reserved and the same are not sold or conveyed with the land herein described."

Three years after Paul and Roxanne divorced in 2007, they executed the Partition Agreement, the stated purpose of which was to "settle and liquidate the community which formerly existed between them[.]" Paragraph I of the Agreement stated, in pertinent part:

> ROX G. POMMIER hereby receives and PAUL ROY POMMIER hereby grants, bargains, sells, conveys and delivers . . . unto ROX G. POMMIER all of his rights, title and interest in and to the following described property, to-wit:

2

> 1.    A certain tract or parcel of land,
> together with all buildings and
> improvements thereon, and all the rights,
> ways, privileges, servitudes, appurtenances
> and advantages thereunto belonging or in
> anywise appertaining, situated in Section 5,
> Township 11 South, range 2 East of
> Vermillion Parish, Louisiana, designated as
> Tract 2 of the Noelia LeBlanc Pommier
> Partition and containing 9.84 acres of
> ground . . . .
>
> N.B.:  Included in this transfer are any and
> all mineral rights, when available, to Rox G.
> Pommier and all surface rights.

Paul and Roxanne disagree on whether the terms of the Partition Agreement transfer a portion of Paul's interest in the mineral servitude to Roxanne. Square Mile, which signed a lease in 2008 to form a drilling unit on the property at issue, was also unable to determine whether Paul and Roxanne intended to transfer a portion of the mineral interest to Roxanne or whether they intended for Paul to retain the whole mineral interest.  When Paul and Roxanne were unable to resolve their differences, Square Mile filed a concursus petition.  Both Paul and Roxanne filed motions for summary judgment at the trial court.  After a hearing, the trial court concluded that the phrase "when available" in paragraph I of the Partition Agreement rendered the N.B. Clause ambiguous.  The trial court then looked to parol evidence, including an affidavit signed by Paul and deposition testimony from Paul and Roxanne.  Based on this evidence, the trial court concluded that the parties did not intend to transfer any portion of the interest in the mineral rights that Paul had inherited to Roxanne.  The trial court granted Paul's motion for summary judgment and denied Roxanne's motion.  From that trial court judgment, Roxanne filed a timely appeal.

## III.

## LAW AND DISCUSSION

On appeal, Roxanne argues that since mineral rights were not expressly excepted in the transfer of Tract 2 in the Partition Agreement, the Agreement unambiguously transferred a portion of Paul's mineral rights to Roxanne. Roxanne interprets the Judgment of Possession as donating to Paul a one-fifth interest in the minerals underlying each of the five surface tracts the Judgment donated to Paul and his siblings, including Tract 2. She points to the "fundamental rule of law that a conveyance of land carries with it all of the incidents of ownership, including mineral rights, except such rights as may be expressly reserved." *Roemer v. Caplis*, 369 So.2d 1186, 1193 (La.App. 2 Cir. 1979), *writ denied*, 371 So.2d 620 (La.1979). Roxanne contends that the phrase "when available" was not an express reservation. Consequently, one-fifth of Paul's interest in the mineral servitude transferred to her. Alternatively, if this court finds that the agreement is ambiguous within its four corners, Roxanne asserts that there remain genuine issues of material fact regarding the parties' intent which would preclude a grant of summary judgment in favor of Paul.

We review a trial court's decision to grant a motion for summary judgment de novo. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226. A motion for summary judgment shall be granted if the evidence shows "that there is no genuine issue as to material fact, and that the mover is entitled to summary judgment as a matter of law." La.Code Civ.P. art. 966(B)(2), *amended by* 2015 La. Acts No. 702, § 1.

Contracts are interpreted to determine the intent of the parties. La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and

lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Moreover, "[e]ach provision in a contract must be interpreted in light of the other provisions[.]" La.Civ.Code art. 2050. Here, the N.B. Clause reads in full: "Included in this transfer are any and all mineral rights, when available, to Rox G. Pommier and all surface rights." Though the phrase "any and all mineral rights" is broad and general, "it must be interpreted to cover only those things it appears the parties intended to include." La.Civ.Code art. 2051. When read in the context of the transfer of Tract 2, it is clear that the phrase "any and all mineral rights, when available" refers to ownership of the minerals underlying Tract 2, whenever they may be available. It happens that those rights could not be transferred by Paul when he signed the Partition Agreement. Paul was a co-owner in indivision of a mineral servitude with his siblings, not the owner of the mineral rights underlying Tract 2, so Paul could not transfer the mineral rights underlying Tract 2. However, the mineral rights would transfer to the owner of the surface of Tract 2 after ten years' nonuse. La.R.S. 31:27(1). The parties were aware of the state of ownership of the minerals underneath Tract 2, and it is not absurd to conclude that Paul and Roxanne intended Roxanne to become owner of the mineral rights underlying Tract 2 should the servitude ever expire. Accordingly, the plain language of the Partition Agreement compels the conclusion that the parties intended to transfer the minerals underlying Tract 2, not Paul's present interest in the mineral servitude, to Roxanne.

This conclusion is further supported by other provisions in the contract. The contract is entitled "Partition of Community Property" and the stated intent of the parties is "to settle and liquidate the *community* which formerly existed between them" (emphasis added). Clearly, the parties intended for the

agreement to deal with *community* property. Paul's interest in mineral rights, on the other hand, is his *separate* property. *See* La.Civ.Code art. 2341 (separate property of a spouse includes property acquired by individual inheritance). Nowhere does the Partition Agreement mention either party's separate property. The plain language of the agreement does not support a reading that would transfer one party's separate property to the other party, and, therefore, does not support Paul transferring his mineral interest to Roxanne.

Furthermore, the interpretation urged by Roxanne would render the language in the N.B. Clause superfluous. Paragraph I of the Partition Agreement requires Paul to transfer "all of his rights, title and interest in" Tract 2. This alone would be sufficient to transfer mineral rights that were immediately available, which would make the N.B. Clause redundant and without effect. This is an outcome that ought to be avoided when interpreting contracts under Louisiana law. *See* La.Civ.Code art. 2049. To give effect to the N.B. clause, and to interpret the contract according to its plain language, we must read the Partition Agreement as transferring the minerals underlying Tract 2 to Roxanne, whenever they become available.

Finally, we note that even if there were any lack of clarity regarding the meaning of the N.B. Clause, that ambiguity would not require us to reach a different result. Rather, any ambiguity in the N.B. clause could be resolved by looking to parol evidence to determine the parties' intent regarding that Clause. *See Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087 (La.1981). The parol evidence in this case consists of an affidavit signed by Paul and deposition testimony from Paul and Roxanne. In his sworn affidavit, Paul stated that "[i]t was never my intention to convey any of my separate property to my former wife" and

6

that he "intended for Rox to get the minerals to the 9.84 acres that we purchased from my nieces . . . which they reserved in the sale."  Similarly, in his deposition, Paul said the following:

> Q:    When you signed [the Partition of Community Property] document, did you read . . . this phrase here that starts NB?  Do you have a memory of that?
>
> A:    Yes.
>
> Q:    What's your understanding of what that means?
>
> A:    When – when available, my understanding was when the profit – when the mineral rights were no longer being paid, after ten years, then she gets all mineral rights off of this section here.  Not this one.
>
> Q:    What – explain to me what your understanding – I think you just said when all the mineral rights were not being paid.  When would that be?  How does that work?
>
> A:    After ten years of production ceasing.

In her deposition, Roxanne explained the meaning of the N.B. Clause as follows:

> Q:    In the Partition of Community Property, it says included in this transfer are any and all mineral rights when available to Rox G. Pommier and all surface rights.  What's your understanding of what that language means?
>
> A:    That if it were available, then I would get it.
>
> Q:    And when would it come available?
>
> A:    Whenever it's there.
>
> Q:    Okay.  When Sue and Debra reserved their interest in the minerals, did you have any understanding of how that would work according to the law, when minerals are reserved?  Was that explained to you during the sale or –
>
> A:    Whenever it was available.
>
> Q:    Did you have any expectation as to when it would become available?
>
> A:    No.
>
>     . . . .

Q:    Okay.  Then when the sale took place, Sue and Debra reserved their interest in those minerals that they –

A:    That's correct.

Q:    -- inherited?  But you and [Paul] as community property acquired the surface with the expectation that at some point in the future, Sue and Debra's minerals would become available to you?

A:    Well, after ten years of no productivity, it goes back to the surface owner.

Q:    So you understand that concept?

A:    Yes.

Q:    Is that what it means when it says when available?

A:    It was just whenever – whenever whatever was available.

From both parties' statements we can easily conclude that they intended the phrase "any and all mineral rights, when available" to refer to the minerals underlying Tract 2, should the servitude expire.  There is no genuine issue of material fact on this question.  We, therefore, find that the trial court properly granted Paul's motion for summary judgment and properly denied Roxanne's motion for summary judgment.  Thus, we affirm the trial court's judgment.

IV.

## CONCLUSION

The judgment of the trial court is affirmed.  Costs are assessed to the appellant, Roxanne G. Pommier.

**AFFIRMED.**