STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**16-436 consolidated with 16-435**


**JOHN BILLIOT**

**VERSUS**

**DALE ANGELLE**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20150057 C/W 20143221
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.


**AFFIRMED.**



**Michael Erwin Katz**
**Attorney at Law**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 581-1394**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    Dale Angelle

**Harold Dewey Register, Jr.**
**Attorney at Law**
**216 Rue Louis XIV**
**Lafayette, LA 70508**
**(337) 981-6644**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    John Billiot

**GREMILLION, Judge.**

The plaintiff/appellant, John Billiot, appeals the summary judgment granted in favor of defendant/ appellee, Dale Angelle. For the reasons that follow, we affirm.

**FACTS**

Mr. Billiot alleged in his petition for damages that he entered into a lease with Mr. Angelle of barn stalls for the purpose of housing a horse. As further alleged, the barn caught fire on February 7, 2014; during this fire, Mr. Billiot's horse was killed. He also lost equipment, supplies, and medicine. Mr. Billiot allegedly discovered the fire himself and unsuccessfully attempted to rescue the horses in the barn. The fire, Mr. Billiot alleged, resulted from the failure of Mr. Angelle to keep the barn in adequate repair. In addition to the loss of his horse, Mr. Billiot alleges that the fire caused him to develop asthma, and that he suffers from recurring nightmares.

Mr. Billiot's suit against Mr. Angelle was consolidated with the suit filed by Mr. Joseph Boxie resulting from the same fire. These matters are also consolidated for purposes of this appeal. *See Boxie v. Angelle*, 16-435 (La.App. 3 Cir. ___/___/16), ___ So.3d ___.

On June 15, 2015, Mr. Angelle filed a motion for summary judgment in which he asserted that the fire was caused by a heating rod that had been left in a bucket of oats in the "feed room." Mr. Angelle argued that Mr. Boxie was in the habit of feeding his animals oats that he cooked in a plastic bucket by inserting a heating rod. In support of his motion, Mr. Angelle introduced the interrogatory responses of Mr. Boxie, the fire investigation report of the Lafayette Fire Department, excerpts from the deposition of Mr. Elliot Roger of the Lafayette Fire Department, Mr. Angelle's own affidavit, and the affidavit of Mr. Dallas Antoine, who also housed a thoroughbred horse with Mr. Angelle.

The matter was not fixed for hearing until October 19, 2015; nonetheless, Mr. Billiot did not file his opposition to the motion for summary judgment until October

13, 2015—almost four months after Mr. Angelle's motion was filed—in contravention of La.Code Civ.P. art. 966(B)(1) and Uniform Rules—District Courts, Rule 9.9, which specifies that a party opposing a motion or exception must serve an opposition memorandum "so that it will be received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time." Mr. Angelle objected to the late filing, and Mr. Billiot's counsel was not allowed to present oral argument. Following the hearing, the trial court granted Mr. Angelle's motion. Mr. Billiot appeals, arguing that a genuine issue of material fact exists in the case.

## ANALYSIS

Mr. Billiot argues that the trial court erred in granting summary judgment to Mr. Angelle because:

> Joseph Boxie presented evidence that Dale Angelle knew of the failing condition of the barn, yet failed to make these repairs; Joseph Boxie presented evidence of what contributed to the fire; and [t]he fireman's investigative report indicated that the origin of the fire was undetermined and that there were no human factors contributing to ignition.

Before we examine each of these three arguments, we will briefly discuss the nature of summary judgment and the standards employed to determine whether summary judgment is warranted.

> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.

> After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(A)(2) & (3). The mover must bear his burden on the motion, but if the burden of proof at trial rests with his opponent, "the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual

2

support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce *factual* support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1). (Emphasis added).

"A fact is 'material' when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. A genuine issue is one on which reasonable minds could disagree. *Id.*

When faced with a properly-supported motion for summary judgment, "an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him." La.Code Civ.P. art. 967(B). (Emphasis added).

Finally, summary judgments are reviewed on appeal de novo; thus, the court of appeal applies the same criteria as the trial court, those set forth above. *Smith*, 639 So.2d 730.

In support of his motion, Mr. Angelle filed Mr. Boxie's answers to interrogatories; the Lafayette Fire Department report of Mr. Elliott Roger; excerpts from Mr. Roger's deposition testimony; the affidavit of Mr. Angelle; the affidavit of Mr. Dallas Antoine, another man who boarded horses in the barn; and the affidavit of Mr. Chad Mouton, who also boarded horses with Mr. Angelle. Mr. Billiot opposed the motion with the complete deposition of Mr. Roger.

The report and deposition of Mr. Roger establish that he was summoned to the scene of the fire as the blaze was still being fought. He arrived and spoke to Mr. Billiot, who indicated that he had arrived at the scene and noticed smoke, which he

3

initially attributed to a pile of rice chaff he had noted behind the barn. However, as he got closer, Mr. Billiot realized that the barn itself was on fire. He entered the barn and saw that the last and next-to-the-last stalls were ablaze. Mr. Billiot began opening stalls to rescue the horses, but the fire was too intense and he was forced to leave.

Mr. Roger's report states:

> In further conversation with Mr. Billiot, he informed me that one of the other horse owner [sic] (Mr. Joseph Boxie) had a habit of cooking oats in his feed room (which was actually a stall converted into a feed and tack room) and forgetting to unplug his heating rod before leaving the barn. Mr. Billiot stated this happened on several occasions. He was certain of this due to Mr. Boxie calling him on several occasions asking him to unplug the heating rod for him. I asked Mr. Billiot how he would cook oats and he stated he would place oats and water in a plastic white five gallon container and insert the heating rod into the oat and water mixture.

Mr. Roger located the feed/tack room and observed the remains of a heating rod, a white plastic bucket, and oats. The electric cord of the heating rod extended toward the location of the electrical outlets.

In his deposition, Mr. Roger stated that the feed/tack room was the area Mr. Billiot observed the fire having originated. The fire's origin in this area coincided with Mr. Roger's observations, too. In it, he found a white plastic bucket that was melted relatively uniformly on all sides. He found the heating rod in the bucket, and it appeared to have melted a hole in the bottom of the bucket. He found bloated oats, indicating that they had been cooked.

Mr. Roger, who was tendered in his deposition as an expert in fire cause and origins, opined that the fire started when the heating rod cooked the water out of the oats and melted through the bottom of the bucket. The rod came into contact with combustible material on the floor of the stall, which ignited the blaze. The heating rod had been subjected to extremely high heat.

On cross-examination, Mr. Roger was asked about whether he observed any electrical outlets that held water. Mr. Roger indicated that he did not. He did not

4

opine a cause of the fire in his report, as that is not his practice; his report represents only Mr. Roger's observations, not his opinions. Nonetheless, Mr. Roger could not express an opinion on the condition of the wiring of the building because the barn was so severely damaged.

Mr. Antoine's affidavit indicates that he had boarded horses at a separate barn on Mr. Angelle's property, but he used an electric walking wheel to exercise his horse on several occasions, including the morning of the fire. This electric walking wheel was energized from the burned barn. Mr. Antoine observed no problems with the electrical system in that barn. Everything he observed of the electrical system on the day of the fire was operating properly.

Mr. Mouton attested in his affidavit that he had been in the barn in question on many occasions and observed no vice or defect in the electrical system of the barn. Although his own horse was destroyed in the fire, Mr. Mouton has made no claim against Mr. Angelle because he observed no vice or defect in the premises on which to base such a claim.

Mr. Angelle's affidavit indicates that he was at the premises on the date of the fire and that he observed no electrical issues. Just a week before the fire, Mr. Angelle had been to the barn to replace some boards in anticipation of acquiring new boarders; at that time, all electrical systems were operating normally.

Mr. Billiot maintains that he presented evidence that the barn was in failing condition and Mr. Angelle failed to make repairs. Those conditions include: boards that needed replacing; lights that needed replacing; soffits that needed replacing; boards that were treated with creosote; a breaker box that was not functioning or was "overloaded"; an outlet that had water leaking into it; and a dead horse that had been allowed to remain in the barn for four days without burial. In no way did Mr. Billiot demonstrate factual support for the proposition that any of these conditions, or a combination of them, led to the fire.

The proof of the cause of the fire is a matter on which Mr. Billiot would bear the burden of proof at trial. Simply stating that certain conditions were present at the barn does not satisfy La.Code Civ.P. art. 966(D)(1); when a defendant such as Mr. Angelle presents evidence of the cause of a fire, and that evidence is properly supported, it is incumbent upon the plaintiff, such as Mr. Billiot, to produce specific factual support that there exists a genuine issue of material fact.

For example, in *Nugent v. J & A Auto Supply, Inc.*, 11-693 (La.App. 3 Cir. 11/2/11), 76 So.3d 650, *writ denied*, 11-2650 (La. 2/10/12), 80 So.3d 481, we held that the plaintiff did produce facts sufficient to demonstrate a genuine issue of material fact regarding the cause of an electrical fire when he produced proof that the building's owner had installed improper-gauge wire in the building, which even the building owner testified may have caused the fire. Similarly, the evidence of dueling expert testimony raised a genuine issue of material fact and precluded a motion for summary judgment in *Shelter Ins. Co. v. Broan-Nutone, LLC*, 39,625 (La.App. 2 Cir. 5/11/05), 902 So.2d 1146, *writ denied*, 05-1483 (La. 12/16/05), 917 So.2d 1112. Mr. Billiot has produced no evidence demonstrating that something other than the heating rod caused the fire, or that the heating rod was in Mr. Angelle's control. Mr. Angelle has produced evidence that the heating rod caused the fire; thus, the burden shifted to Mr. Billiot to produce evidence either that it did not or that something else did. Conjecture and conclusory statements are not evidence. *See Scott v. City of Shreveport*, 15-1438 (La. 10/9/15), 186 So.3d 1149 (Crichton, Justice, concurring).

Similarly, we find the lack of an opinion in Mr. Roger's report to be of no moment. It is common, in the court's experience, for experts to omit opinions in reports that they freely express in testimony. The court is precluded from engaging in credibility determinations on summary judgment; however, because we find no inconsistency between Mr. Roger's report and his testimony, there exists no genuine

6

issue of material fact. *See Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La. 2/29/00), 755 So.2d 226.

## CONCLUSION

We affirm the summary judgment granted to Mr. Dale Angelle. He demonstrated in his motion that the cause of the fire that engulfed his barn was a heating rod that was not in his control. Mr. John Billiot failed to produce evidence demonstrating that there was another cause or that Mr. Angelle controlled the heating rod. All costs of this appeal are taxed to plaintiff/appellant, John Billiot.

**AFFIRMED.**