WINDHORST, J.
*857 Appellants/plaintiffs, Phyllis Montalbano, Lisa M. Pecquet, and John A. Montalbano, Jr., appeal the trial court's February 19, 2019 judgment granting summary judgment in favor of appellee/defendant, the Louisiana Patient's Compensation Fund ("the PCF"), on behalf of nominal defendant, East Jefferson General Hospital ("EJGH"), dismissing appellants' medical malpractice and wrongful death claims against the PCF with prejudice.[1] For the reasons stated herein, we reverse and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
On November 28, 2008, John Montalbano, Sr. was admitted to EJGH by Dr. Christopher N. Barrilleaux after complaining of severe mid-epigastric abdominal pain with a history of nausea and vomiting. On November 29, 2008, an MRI showed that Mr. Montalbano had a 1.5 cm stone in his common bile duct in the head of the pancreas. On November 30, 2008, Dr. Barrilleaux performed an emergency endoscopic retrograde cholangiopancreatography (ERCP) procedure on Mr. Montalbano. Prior to the beginning of the procedure, Mr. Montalbano was diagnosed with sepsis. Dr. Barrilleaux performed a biliary sphincterotomy and a large amount of sludge, debris and one large stone was removed. Dr. Barrilleaux was unable to remove another large stone due to Mr. Montalbano's instability from bradycardia. A biliary stent was placed in the bile duct. Once the endoscope was withdrawn "asystole was noted," CPR was started, and after treatment and intubation to improve ventilation, Mr. Montalbano was brought to ICU. Unfortunately, Mr. Montalbano suffered an anoxic encephalopathy with profound neurological deficits. Mr. Montalbano remained at EJGH until January 6, 2009.
On March 31, 2011, Mr. Montalbano and his wife Phyllis Montalbano filed a medical malpractice lawsuit[2] against several *858 defendants, including EJGH. As to EJGH, plaintiffs contended that EJGH's nursing staff breached the standard of care of hospitals rendering care and treatment to Mr. Montalbano and this breach resulted in the alleged injuries to Mr. Montalbano. Specifically, plaintiffs claimed that EJGH's nursing staff failed to timely notify defendant, Dr. Barrilleaux, "as to the signs and symptoms of severe disease apparent from the presentation of Mr. Montalbano." During the litigation, Mr. Montalbano passed away and Ms. Montalbano was substituted as the proper party plaintiff.
On January 24, 2013, Mrs. Montalbano and Mr. Montalbano's natural children, Lisa M. Pecquet and John A. Montalbano, Jr. filed a wrongful death lawsuit against the same defendants in the medical malpractice lawsuit, including EJGH's nursing staff.[3] On April 3, 2013, the medical malpractice and wrongful death lawsuits were consolidated.
On September 8, 2016, plaintiffs, Mrs. Montalbano, Ms. Pecquet, and Mr. Montalbano, Jr., entered into a settlement agreement with EJGH, which was approved by the trial court, wherein EJGH agreed to settle its liability with plaintiffs pursuant to La. R.S. 40:1231.4, et seq. with a reservation of rights to plaintiffs to proceed against the PCF and the remaining defendants.
On June 8, 2018, the PCF filed a motion for summary judgment arguing that EJGH's nursing staff complied with the applicable standard of care and that plaintiffs did not have the expert testimony necessary to establish that EJGH's nursing staff breached the standard of care, or that any alleged breach caused any damages, in accordance with La. R.S. 9:2794. The PCF argued that the medical review panel opinion was prima facie evidence of the panel's finding that EJGH's nursing staff did not breach the standard of care. Additionally, the PCF attached excerpts from several medical experts' depositions, alleging that all of the experts, including plaintiffs' expert, found that EJGH's nursing staff did not breach the standard of care. The PCF pointed out that in his deposition, plaintiffs' expert, Dr. Peter Cotton, stated "I don't think I've stated the nurses breached the standard of care." Therefore, the PCF argued that it established that there was an absence of factual support for one or more elements essential to appellants' claims and accordingly, it was entitled to judgment as a matter of law.[4]
In opposition, appellants argued that the evidence established that EJGH's nursing staff breached the applicable standard of care. Appellants contended that the original allegations against EJGH's nursing staff were derived from Dr. Barrilleaux's *859 first deposition testimony in 2010, wherein he stated that based on a review of the medical records, he disagreed with the nursing note that stated the nurses called him on multiple occasions. In the 2010 deposition, Dr. Barrilleaux also testified that he was unhappy with the nurses because "they called [him] at 08:45 about this patient who appeared to have been demented and having low blood pressure issues throughout the early part of the night or early morning hours." When asked why he would have wanted to know about Mr. Montalbano's condition earlier, Dr. Barrilleaux stated "so I could get started doing things earlier." Dr. Barrilleaux testified that he would have wanted to know earlier about Mr. Montalbano's condition on November 29, 2008 when it was noted that Mr. Montalbano was "confused and in bed" because that would have made him "worry" that Mr. Montalbano "had progressed in sepsis." He testified that had he known earlier, he would have made "sure he's in an ICU if he wasn't already.... And then probably set up things to have the ERCP done earlier in the morning." Appellants contended that Dr. Barrilleaux's 2010 deposition testimony was highly critical of the nursing staff and its failure to communicate earlier to him critical information about Mr. Montalbano's condition throughout the night and earlier morning hours prior to Mr. Montalbano's emergency ERCP. Appellants additionally submitted Dr. Cotton's expert report, attached as an exhibit to his deposition, wherein he stated that EJGH's nursing staff breached the applicable standard of care by failing to communicate appropriate information to Dr. Barrilleaux and that this was a substantial factor in Mr. Montalbano's demise.[5] In anticipation of the PCF's argument that Dr. Barrilleaux subsequently changed his former opinion of the nursing staff in a second deposition in 2016 by stating that the nursing staff did not breach any standard of care, appellants argued that by its contradictory nature, Dr. Barrilleaux's deposition testimony in 2010 and 2016 created a genuine issue of material fact precluding summary judgment.[6]
The trial court granted the PCF's motion for summary judgment against plaintiffs, Phyllis Montalbano, Lisa Pecquet, and John Montalbano, Jr., dismissing with prejudice all of plaintiffs' claims against the PCF in the medical malpractice and wrongful death lawsuits. In granting the summary judgment, the trial court stated the following:
This Court finds that the Louisiana Patient's Compensation Fund has shown an absence of factual support for the plaintiff's claims through the following:
*860 The Medical Review Panel opinion, the deposition testimony of Dr. Gary Reiss, the deposition testimony of Dr. Reddy, the deposition of Dr. Hunt, among other things. And at this point, the plaintiff did not provide this court with sufficient evidence to show that the plaintiff would be able to carry its [sic] evidentiary burden of proof at trial in particular plaintiff's own expert Dr. Cotton testified in his deposition that page 85, Line 22 that, quote, I don't think I've stated the nurses breached the standard of care. Furthermore, at that same deposition, on page 86, Lines 8-15, Dr. Cotton testified that it was true that he could not state the time that he believed the nursed [sic] breached the standard of care nor could he point the one point in the medical records where he found such a breach. For all of the following reasons, again, this Court grants the motion for summary judgment on behalf of Louisiana Patient's Compensation Fund.
This appeal followed.
LAW AND ANALYSIS
On appeal, appellants argue that the trial court erred (1) in granting the PCF's motion for summary judgment because genuine issues of material fact exist precluding summary judgment; and (2) by allowing the uncertified, unauthenticated medical review panel opinion into evidence.
A motion for judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3). The trial court may only consider those documents filed in support of or in opposition to the motion for summary judgment. La. C.C.P. art. 966 D(2). The only documents that may be filed in support of or in opposition to the motion for summary judgment are "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966 A(4).
The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966 D(1). However, if the movant will not bear the burden of proof at trial, the movant's burden on a motion for summary judgment does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. If the adverse party fails to produce factual support sufficient to establish a genuine issue of material fact, summary judgment should be granted. Id.
In deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 236. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam ); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines, 876 So.2d at 765 ; Smith, 639 So.2d at 751. In determining whether the evidence creates a genuine issue of material fact, the trial court *861 cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence. See Smith, 639 So.2d at 751 ; Janney v. Pearce, 09-2103 (La. App. 1 Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 10-1356 (La. 9/24/10), 45 So.3d 1078. If a party submits admissible expert opinion evidence in opposition to a motion for summary judgment, and it is sufficient to allow a reasonable trier of fact to conclude that the expert's opinion on a material fact more likely than not is true, the trial court should deny the motion. Independent Fire Ins. Co., 755 So.2d at 235 n. 4.
In a medical malpractice claim, the plaintiff bears the burden of proving (1) the degree of care ordinarily practiced by physicians in the defendant physician's specialty, (2) that the defendant either lacked this degree of skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and (3) that as a proximate result of the breach the plaintiff suffered injuries that would not otherwise have been incurred. La. R.S. 9:2794 A; Samaha v. Rau, 07-1726 (La. 2/26/08), 977 So.2d 880, 883-884 ; Fischer v. Megison, 07-1023 (La. App. 5 Cir. 5/27/08), 986 So.2d 95, 101. Because of the complex medical and factual issues involved, a plaintiff in most cases will need expert testimony to sustain his burden of proving his claim under La. R.S. 9:2794's requirements. Pfiffner v. Correa, M.D., 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228.
Appellate courts review the granting of summary judgment de novo , using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Hogg v. Chevron USA, Inc., 09-2632 (La. 7/6/10), 45 So.3d 991, 996.
Upon de novo review of the record, we find a genuine issue of material fact exists as to when or if Dr. Barrilleaux was notified of Mr. Montalbano's condition. Based on Dr. Barrilleaux's deposition testimony in 2010 and 2016, a reasonable trier of fact could conclude that EJGH's nursing staff breached the standard of care in failing to notify Dr. Barrilleaux of Mr. Montalbano's condition and that Mr. Montalbano sustained damages therefrom. As there was clearly conflicting evidence, a genuine issue of material fact exists in this case precluding summary judgment. It is apparent from the record that the trial court was presented with competing evidence and erroneously made credibility determinations, weighing the conflicting evidence. Because credibility determinations are reserved for the trier of fact, and having found that a genuine issue of material fact exists, we reverse the trial court's judgment granting summary judgment in favor of the PCF.
Because we find upon de novo review that the trial court erred in granting summary judgment in favor of the PCF because genuine issues of material fact exist, we pretermit discussion of appellants' second assignment of error.
DECREE
For the reasons stated above, the trial court's judgment granting summary judgment in favor of the Louisiana Patient's Compensation Fund is reversed and the matter is remanded for further proceedings.
REVERSED; REMANDED

On February 14, 2019, this Court ordered the trial court to amend its original July 23, 2018 judgment to contain the appropriate and necessary decretal language for a valid, final judgment. The trial court accordingly amended its judgment on February 19, 2019.

John A. Montalbano and his wife, Phyllis Montalbano versus Nicholas J. Persich, M.D., Christopher N. Barrilleaux, M.D. and Jefferson Parish Hospital Service District No. 2, Parish of Jefferson, State of Louisiana d/b/a East Jefferson General Hospital, case number 699-966, Division "N."

Phyllis Montalbano, Lisa M. Pecquet and John A. Montalbano, Jr., in their capacity as individuals pursuant to La. Civil Code Art. 2315.2 versus Nicholas J. Persich, M.D., Christopher N. Barrilleaux, M.D. and Jefferson Parish Hospital Service District No. 2, Parish of Jefferson, State of Louisiana d/b/a East Jefferson General Hospital, case number 723-208, Division "B."

In support of its motion for summary judgment, the PCF submitted the following exhibits: (1) medical review panel opinion; (2) excerpts from the deposition of Gary Reiss, M.D.; (3) excerpts from the deposition of Peter Cotton, M.D.; (4) excerpts from the deposition of Neelima Reddy, M.D.; (5) excerpts from the second deposition of Christopher Barrilleaux, M.D., dated June 8, 2008; and (6) excerpts from the deposition of John Hunt, M.D. In response to appellants' motion to strike, the PCF agreed to withdraw Dr. Hunt's November 3, 2015 report and the affidavit of Kendra M. Barrier, R.N., Ph.D.

Appellants also made additional arguments, not necessary for our analysis, as to other testimony and evidence that would allegedly support a breach of the standard of care and preclude summary judgment in favor of the PCF.

In support of their opposition to the motion for summary judgment, appellants submitted the following documents: (1) the certified medical record of Mr. Montalbano's discharge summary from March 2008; (2) in globo excerpts from the deposition of John Hunt, M.D.; (3) nursing round notes from November 29, 2008 - December 1, 2008; (4) in globo excerpts from the certified medical record from EJGH, admit date November 28, 2008; (5) in globo excerpts from the deposition of Christopher Barrilleaux, M.D., dated October 10, 2010; (6) in globo excerpts from the deposition of Christopher Barrilleaux, M.D., dated June 8, 2016; (7) in globo excerpts from the deposition of Dawn M. Seghers, LPN, dated August 20, 2013; (8) in globo excerpts from the deposition of Keione Wilson Jackson, dated April 8, 2014; (9) in globo excerpts from the deposition of Neelima Reddy, M.D.; and (10) in globo excerpts from the deposition of Peter Cotton, M.D., dated August 22, 2016; including his report, date October 13, 2015.